STATE OF NORTH CAROLINA v. WILBERT LOUIS DAVIS

No. 829SC712

(Filed 5 April 1983)

1. Criminal Law § 126— right to unanimous verdict—no coercion into assenting to verdict

A juror was not coerced into assenting to the verdict where the record disclosed that when the juror said "not guilty" in response to the polling of the jury, she was asking if the clerk's question was whether she voted guilty or not guilty, and her subsequent assent to the verdict was unequivocal. N.C. Constitution Art. I, § 24.

2. Criminal Law § 91.7— denial of motion for continuance—absence of witnesses—no error

Where defendant had an opportunity to present his defense through his own testimony and that of another, where he failed to show how he was prejudiced by the absence of other witnesses, and where the testimony of the absent witnesses would not have added anything more than corroboration to his defense, the denial of his motion for a continuance did not deprive him of his constitutional right to confront his accusers.

3. Criminal Law § 169.7— exclusion of testimony—absence of prejudice

The failure of the trial court to allow a defense witness on redirect examination to answer whether another man looked anything like defendant was not prejudicial error since defendant failed to include in the record what the witness would have said had he been permitted to answer, since the question was beyond the scope of the matters raised on cross-examination, and since defendant had previously said that the man "ain't identical to me, but he favors me."

APPEAL by defendant from *Brewer, Judge.* Judgment entered 22 April 1982 in Superior Court, FRANKLIN County. Heard in the Court of Appeals 17 January 1983.

Defendant was charged with driving while his license was revoked and suspended, in violation of G.S. 20-28(a). He was convicted in District Court and received a sentence of not less than seven months and not more than eight months. Defendant appealed to Superior Court for a trial de novo. Prior to jury selection, defendant moved for a continuance because four of his subpoenaed witnesses were not present. The motion was denied.

The State's evidence tended to show the following. Donald Valentine, a United States Postal Service mail carrier and auxiliary policeman with the Louisburg Police Department, was the

only witness for the State. He had known defendant for about eleven years. He saw defendant at a party on Kenmore Avenue on 7 September 1981 at midnight or twelve-thirty a.m. About five hours later, Valentine was patrolling, looking for break-ins, and saw defendant's car. He signalled it to stop. With his blue light and siren on, he pursued defendant's car for several blocks. According to Valentine, defendant stopped, got out of his car, turned around and looked at Valentine, and ran off into the bushes. Valentine called out his name and told him not to run. He did not try to follow defendant. Although it was still dark, the headlights of both cars and nearby street lights were on. Valentine said he was positive the man he saw was defendant, and he did not know anybody else who looked like defendant. There were two other officers present who had arrived to assist Valentine. They talked to the woman who was sitting in defendant's car. Valentine asked her what she and Wilbert Davis had been doing, and she told him they had been driving around drinking. He did not ask for her name.

Defendant's evidence tended to show the following. Rufus Davis, defendant's nephew, said he was with defendant all day before they went to the party on Kenmore Avenue. He drove defendant to the party in defendant's car. At the party, Charlie Smith, defendant's cousin, and Wanda Allen, borrowed defendant's car. Rufus Davis said he and defendant left together with Ricky Walker, his brother, at four or five a.m. On re-direct, defendant's counsel asked Rufus Davis if Smith looked like defendant. The State's general objection to the question was sustained.

Deputy Sheriff Johnson testified that he answered a call about a disturbance at a party on Kenmore Avenue. He told defendant and his brother Johnny Davis to leave. When defendant and Johnny Davis got in defendant's car, Johnny Davis got in the driver's side and defendant got in the passenger side.

Defendant's testimony essentially corroborated Rufus Davis' testimony. He said Ricky Walker took him home from the party because Smith had not yet returned his car. He also said that when he got to his mother's house his mother told him someone had brought his car back. The keys were not in the car. He described Smith and said "he ain't identical to me, but he favors me." He denied driving his car on 7 September 1981.

Defendant was found guilty of driving with suspended or revoked license. He was sentenced to a minimum of twenty-two months and maximum of twenty-four months.

*Attorney General Edmisten, by Associate Attorney John R. Corne, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Lorinzo L. Joyner, for defendant appellant.*

VAUGHN, Chief Judge.

[1]  Defendant's first argument is that he was deprived of his right to a unanimous verdict as required by Art. 1, § 24 of the North Carolina Constitution. Defendant contends that one juror, Bertha Brodie, was coerced into assenting to the verdict. We do not agree. After the jury finished deliberating, they returned to the courtroom and the assistant clerk read the following: "We, the jury, by unanimous verdict, find the defendant, Wilbert Louis Davis, to be guilty of driving while his license was suspended." Then he asked: "Is this your verdict, so say you all? If it is, please raise your hand." All the jurors raised their hands. The clerk then polled the jury. When he reached the eleventh juror, the following exchange took place:

> Clerk: Bertha Brodie. Your foreman has returned a verdict of guilty of driving while his license was suspended. Is this your verdict and do you now assent thereto?
>
> Juror Brodie: Not guilty.
>
> The Court: Excuse me, ma'am?
>
> Juror Brodie: What do you say? I vote guilty or not guilty?
>
> The Court: Guilty?
>
> Juror Brodie: Oh, yes, ma'am.
>
> Clerk: Guilty of driving while —
>
> The Court: Is that your verdict?
>
> Juror Brodie: Yes, ma'am.
>
> The Court: And do you still assent thereto?
>
> Juror Brodie: Yes, sir.

The purpose of polling the jury is to give each juror an opportunity, before the verdict is recorded, to declare his or her assent in open court, and enable the court to determine that a unanimous verdict has been reached. *Davis v. State,* 273 N.C. 533, 160 S.E. 2d 697 (1968). A verdict is not defective if the juror understood that he or she has a right to dissent and eventually freely assented to the verdict. *State v. Asbury,* 291 N.C. 164, 229 S.E. 2d 175 (1976). In this case it is likely that when Brodie said "Not guilty" she was asking if the clerk's question was whether she voted guilty or not guilty. Her subsequent assent to the verdict was unequivocal. Defendant was convicted by an unambiguous, unanimous verdict.

[2] Defendant's second argument is that the trial court erred in denying his motion for a continuance to enable him to secure attendance of his witnesses. A motion for continuance is ordinarily addressed to the sound discretion of the trial court, and its ruling is not reviewable absent abuse of discretion. *State v. Smathers,* 287 N.C. 226, 214 S.E. 2d 112 (1975). The question is one of law, not discretion, and is reviewable on appeal if the motion is based on a right guaranteed by the federal and state constitutions. *State v. Brower,* 289 N.C. 644, 224 S.E. 2d 551 (1976). The question here is one of law because the right to face one's accusers and witnesses with other testimony is guaranteed by the sixth amendment to the federal constitution, applicable to the states through the fourteenth amendment, and by Article I, sections 19 and 23 of the North Carolina Constitution. *State v. Cradle,* 281 N.C. 198, 188 S.E. 2d 296, *cert. denied,* 409 U.S. 1047, 93 S.Ct. 537, 34 L.Ed. 2d 499 (1972). Defendant contends he was prejudiced because the testimony of the absent witnesses would have established testimony critical to his defense and refuted Valentine's testimony. Defendant, however, failed to include in the record the proposed testimony of the absent witnesses. Defendant's counsel merely said,

> I would like for the record to show that the defendant, prior to entering his plea, moved for a continuance for reason that three or four of his defense witnesses are not present or available for trial; that all four of them are under subpoena, namely, Charles Smith, Ricky Walker, Johnny Lee Davis and Wanda Allen. That the majority, or all but one of these witnesses were present in court yesterday when the case

was calendared; however, for reasons unknown to me and just only speculating, they are not here today. And the defendant is of the opinion that they are vital to his defense in this cause.

Since defendant had an opportunity to present his defense through his own testimony and the testimony of his nephew, Rufus Davis, and has failed to show how he was prejudiced by the absence of his other witnesses, the testimony of the absent witnesses would not have added anything more than corroboration to his defense. The denial of defendant's motion for a continuance did not deprive him of his constitutional right to confront his accusers.

[3] Defendant's third argument is that the trial court erred when it did not allow witness Rufus Davis to say whether Smith resembled defendant. Defendant contends that his defense was that Valentine mistook Smith for him, and he was deprived of his defense when the trial judge sustained the State's objection to his question on redirect examination. "[Does Charles Smith] look anything like Wilbur?" Defendant, however, failed to include in the record what Rufus Davis would have said had he been permitted to answer, so the assignment of error cannot be sustained. *State v. Fletcher*, 279 N.C. 85, 181 S.E. 2d 405 (1971). As well as being too speculative, the question was beyond the scope of the matters raised on cross-examination. 1 Brandis on North Carolina Evidence § 36 (1982). Moreover, defendant previously said Smith "ain't identical to me, but he favors me," so if Rufus Davis had said Smith resembled defendant it would be merely corroborative and not essential to his defense.

We have carefully reviewed defendant's assignments of error and find no error.

No error.

Judges WELLS and BRASWELL concur.