STATE OF NORTH CAROLINA v. JOSEPH FRANCIS JERNIGAN

No. 945SC286

(Filed 21 March 1995)

**1. Automobiles and Other Vehicles § 818.1 (NCI4th)— habitual impaired driving—no arraignment on charge alleging previous conviction—stipulation to previous convictions— no error**

In a prosecution for habitual impaired driving, the trial court's failure to formally arraign defendant upon the charge alleging the previous convictions and failure to inform defendant that he could admit the previous convictions, deny them, or remain silent as required by N.C.G.S. § 15A-928(c) was not reversible error, since defendant's attorney informed the court that he had discussed the case with defendant and that defendant would stipulate to the previous convictions; defendant did not contend that his attorney was acting contrary to his wishes; defendant was fully aware of the charges against him; and defendant was in no way prejudiced by the omission of the arraignment.

**Am Jur 2d, Automobiles and Highway Traffic § 310.**

**Automobiles: validity and construction of legislation authorizing revocation or suspension of operator's license for "habitual," "persistent," or "frequent" violations of traffic regulations. 48 ALR4th 367.**

**Chronological or procedural sequence of former convictions as affecting enhancement of penalty under habitual offender statutes. 7 ALR5th 263, sec. 1.**

**2. Jury § 69 (NCI4th)— alternate juror sent to jury room—no deliberations—no prejudicial error**

The trial court did not err in allowing an alternate juror to retire to the jury room with the jury and in not declaring a mistrial based on this error where the jurors, along with the alternate, were sent to the jury room and instructed to select a foreman but not to discuss the case while counsel argued for corrections to the charge; the jurors returned to the courtroom after having selected a foreman and were reinstructed on a portion of the charge; and the court then excused the alternate.

**Am Jur 2d, Jury § 126.**

STATE v. JERNIGAN

[118 N.C. App. 240 (1995)]

**Presence of alternate juror in jury room as ground for reversal of state criminal conviction. 15 ALR4th 1127.**

### 3. Criminal Law § 275 (NCI4th)— denial of continuance to secure witness

The trial court did not err in the denial of defendant's motion for a continuance to secure the presence of a defense witness where the whereabouts of the witness were unknown; no subpoena for the witness was issued prior to the original trial date; defense counsel stated that the witness had "just sort of disappeared" and that if subpoenaed for another trial date "he might not show up"; and the testimony of the witness would not have added anything more than corroboration to the defense.

**Am Jur 2d, Continuance §§ 29-32.**

**Right of accused to continuance because of absence of witness who is fugitive from justice. 42 ALR2d 1229, supp sec. 1.**

**Admissions to prevent continuance sought to secure testimony of absent witness in criminal case. 9 ALR3d 1180.**

Appeal by defendant from judgments and commitments entered 1 July 1993 by Judge Paul M. Wright in New Hanover County Superior Court. Heard in the Court of Appeals 11 January 1995.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Isaac T. Avery, III and Associate Attorney General Allyson K. Kurzmann, for the State.*

*Nora Henry Hargrove for defendant-appellant.*

LEWIS, Judge.

Defendant was convicted of habitual impaired driving, no operator's license, and resisting arrest and was sentenced to consecutive terms of three years, six months, and six months, respectively. From the judgments and commitments, defendant appeals.

The State's evidence tended to show that on 2 January 1993 at about 1:45 a.m., Detective Douglas Vredenburgh, of the New Hanover County Sheriff's Department, observed defendant get into the driver's side of a black pickup truck at a convenience store. Vredenburgh

STATE v. JERNIGAN

[118 N.C. App. 240 (1995)]

knew defendant and was aware that he did not have a valid driver's license. Vredenburgh followed defendant for approximately a mile and a half with his blue lights on, and he noticed that defendant was driving erratically. The truck then pulled into a driveway near defendant's home. Defendant got out by the driver's side door and began running away from the truck. Defendant's passenger, Charles Curtis Atkinson, whom Vredenburgh also knew, got out of the passenger's side door but stood by the truck. Vredenburgh called for backup and then began to chase defendant, who had run out of sight. About three or four minutes later, Vredenburgh found defendant hiding in a bush in back of a nearby house. Defendant was then placed under arrest.

Defendant's evidence consisted of the testimony of Jasper Hollowuay and that of defendant. Hollowuay testified that at about 1:45 on the morning in question, he was driving to his parents' house, when he saw defendant, walking along the side of the road. Though he did not know him, he decided to offer defendant a ride because defendant was stumbling and weaving back and forth. As they approached defendant's home, Hollowuay saw the blue lights of the police car and decided to stop and let defendant out. Hollowuay testified that he had drunk a few beers and did not want to be stopped by the police.

Defendant testified that, after leaving a lounge, he began to walk home. As he was walking, Hollowuay offered him a ride and he accepted. After defendant got out of Hollowuay's car, he noticed the blue lights and saw a person running toward him. Defendant ducked behind a bush and the person ran by him. Shortly thereafter, an officer came up, ordered defendant out of the bushes, and arrested him.

Defendant also testified that because of his poor vision he receives disability benefits and is unable to drive. He further stated that he had not driven since 1990. On cross-examination, defendant testified that he had been receiving disability benefits for about seven years because of his vision. He also testified that in those seven years, he had been convicted of driving while impaired three times.

I.

[1] Defendant's first contention relates to his conviction for habitual impaired driving. A person commits the offense of habitual impaired driving if he drives while impaired and has been convicted of three or more offenses involving impaired driving within seven years of the date of the current offense. N.C.G.S. § 20-138.5(a) (Cum. Supp. 1994).

STATE v. JERNIGAN

[118 N.C. App. 240 (1995)]

N.C.G.S. § 15A-928 (1988) provides the procedures to be followed in cases in which "the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter." § 15A-928(a). Defendant's contention is that the trial court erred in failing to follow the procedures set out in section 15A-928.

Section 15A-928(c) provides that after the commencement of the trial and before the close of the State's case, the judge must arraign the defendant in the absence of the jury upon the charge that the defendant was previously convicted of the specified offense. The judge must advise the defendant that he may admit the previous conviction, deny it, or remain silent. *Id.* If the defendant admits the previous conviction, that element of the higher grade offense is established, and no evidence in support thereof may be adduced by the State. § 15A-928(c)(1). If the defendant denies the previous conviction or remains silent, the State may prove that element of the higher grade offense before the jury as a part of its case. § 15A-928(c)(2).

In this case, the trial court did not formally arraign defendant upon the charge alleging the previous convictions and did not advise defendant that he could admit the previous convictions, deny them, or remain silent, as required by section 15A-928(c). Defendant argues that this failure to follow the statute was reversible error. We disagree.

Before trial, the prosecutor and defense counsel informed the trial court that defendant was willing to stipulate to his previous convictions. The prosecutor asked defense counsel if, in fact, defendant was stipulating to the previous convictions set out in the indictment. Thereafter, the following exchange took place:

[Defense Counsel]: Your Honor, for purposes of simplifying the case I have had discussions with my client and he understands that basically our defense is that he was not there. He is not only willing to stipulate as to his criminal record and it would be a felony, he is also willing to stipulate that he was legally impaired . . . .

[Prosecutor]: [A]s far as the criminal record I just want to make sure that the basis as set out in the indictment is correct.

[Defense Counsel]: That's correct.

[Prosecutor]: And would be guilty of felony DWI?

[Defense Counsel]: That's correct.

Because defendant stipulated to his previous convictions, the State, in accordance with section 15A-928(c)(1), presented no evidence to the jury of defendant's previous impaired driving convictions, and the case was submitted to the jury with no reference to those convictions and as if the fact of the previous convictions were not an element of the offense.

The purpose of section 15A-928 is to insure that the defendant is informed of the previous convictions the State intends to use and is given a fair opportunity to either admit or deny them or remain silent. *State v. Ford,* 71 N.C. App. 452, 454, 322 S.E.2d 431, 432 (1984). This purpose is analogous to that of N.C.G.S. § 15A-941 (Cum. Supp. 1994), the general arraignment statute. Under that statute, the defendant must be brought before a judge and must have the charges read or summarized to him and must be directed to plead. § 15A-941(a). If the defendant does not plead, he must be tried as if he pled not guilty. *Id.* The failure to arraign the defendant under section 15A-941 is not always reversible error. "Where there is no doubt that a defendant is fully aware of the charge against him, or is in no way prejudiced by the omission of a formal arraignment, it is not reversible error for the trial court to fail to conduct a formal arraignment proceeding." *State v. Smith,* 300 N.C. 71, 73, 265 S.E.2d 164, 166 (1980).

We believe that the reasoning and holding in *Smith* apply here. If there is no doubt that defendant was fully aware of the charges against him and was in no way prejudiced by the omission of the arraignment required by section 15A-928(c), the trial court's failure to arraign defendant is not reversible error. In this case, defendant's attorney informed the court that he had discussed the case with defendant and that defendant would stipulate to the previous convictions. In addition, just before the close of the State's case-in-chief, defense counsel reaffirmed the stipulation to the trial court. Because of defendant's stipulation to the previous convictions, the State could not introduce evidence of the previous convictions before the jury. § 15A-928(c)(1); *Ford,* 71 N.C. App. at 454, 322 S.E.2d at 432. Defendant makes no contention on appeal that he was not aware of the charges against him, that he did not understand his rights, or that he did not understand the effect of the stipulation.

Defendant does contend, however, that the stipulation was ineffective because it was made by his attorney without defendant's having been advised by the court of his rights regarding the stipulation. Defendant equates the requirements of section 15A-928(c) to the requirement that a guilty plea be made knowingly and voluntarily. However, it is clear that a defendant's attorney may stipulate to an element of the charged crime on behalf of the defendant, and that the stipulation may be entered and read to the jury. *State v. Morrison*, 85 N.C. App. 511, 514-15, 355 S.E.2d 182, 185, *disc. review denied and appeal dismissed*, 320 N.C. 796, 361 S.E.2d 84 (1987). Moreover, there is no requirement that the record show that the defendant personally stipulated to the element or that the defendant knowingly, voluntarily, and understandingly consented to the stipulation. *Id.* In *State v. Watson*, 303 N.C. 533, 538, 279 S.E.2d 580, 583 (1981), the Supreme Court held:

It is well-established that stipulations are acceptable and desirable substitutes for proving a particular act. Statements of an attorney are admissible against his client provided that they have been within the scope of his authority and that the relationship of attorney and client existed at the time. In conducting an individual's defense an attorney is presumed to have the authority to act on behalf of his client. The burden is upon the client to prove lack of authority to the satisfaction of the court.

(Citations omitted). In the present case, defendant has not shown, nor does he contend, that his attorney was acting contrary to his wishes.

From the record it is clear that defendant was fully aware of the charges against him, that he understood his rights and the effect of the stipulation, and that he was in no way prejudiced by the failure of the court to formally arraign him and advise him of his rights. We must not put form over substance; we must not return to strict legalism and require magic words chanted in precise sequence to make an act right. We conclude that there was no reversible error.

II.

[2] Defendant's next contention is that the trial court erred in allowing an alternate juror to retire to the jury room with the jury and in not declaring a mistrial based on this error.

At the conclusion of the court's charge to the jury, the court instructed:

I would recommend the first thing you do when you retire to your jury room is to select a foreman or foreperson. . . . Now, at this time the law requires me to let you go back to the jury room for just a minute or two while I confer with the lawyers. During this time I recommend you select a foreman but do not talk about the case itself. Now, I will call you back in and then I will give you your final order to go talk about the case. Sheriff, take the jury out for just a minute.

The jurors, including the alternate, were excused from the courtroom. The court then heard the arguments of counsel regarding portions of the jury charge. The jurors returned to the courtroom, after having selected a foreman, and were reinstructed on a portion of the charge. The court then excused the alternate, directing him to have a seat in the audience.

It is well settled that the presence of an alternate juror in the jury room *during deliberations* constitutes reversible error *per se. State v. Bindyke*, 288 N.C. 608, 627, 220 S.E.2d 521, 533 (1975); *see also* N.C.G.S. § 15A-1215(a) (1988) (alternate jurors must be discharged upon final submission of case to jury). In *Bindyke*, the Court held:

The presence of an alternate juror in the jury room at any time during the jury's deliberations will void the trial. The alternate has participated by his presence; and the court will conduct no inquiry into the nature or extent of his participation. However, if through inadvertence, the alternate retires with the jury at the time the case is submitted to it, and his presence in the jury room is discovered so promptly that the trial judge believes it probable no deliberations have begun, he may recall the jury and the alternate and make the limited inquiry whether there has been any discussion of the case or comment with reference to what the verdict should be. If the answer is YES, the judge must declare a mistrial; if the answer is NO, the jury will retire to begin its deliberations.

*Id.* at 629-30, 220 S.E.2d at 534-35.

"At the heart of the Court's holding in *Bindyke* was the appearance of impropriety during the *deliberations* of the jury." *State v. Kennedy*, 320 N.C. 20, 30, 357 S.E.2d 359, 365 (1987). In the present case, however, the case had not been submitted to the jury for deliberation. The jury was sent out so that counsel could argue for corrections to the charge, and the jurors merely selected a foreman. We do

not believe that the selection of a foreman constitutes "delibera-tions," "discussion of the case" or "comment with reference to what the verdict should be," as proscribed by *Bindyke. See State v. Godwin*, 95 N.C. App. 565, 571, 383 S.E.2d 234, 237 (1989) (implying that the selection of a foreperson does not amount to deliberation). The trial judge here instructed the jurors not to talk about the case itself, but that he would call them back into the courtroom and give them their final order to retire to discuss the case. He then instructed the Sheriff to take the jury out "for just a minute." In the absence of any indication to the contrary, we must presume that the jurors fol-lowed the instructions of the court and did not discuss the case. *See State v. Shrader*, 290 N.C. 253, 265, 225 S.E.2d 522, 530 (1976) (jury presumed to have followed court's instruction during trial not to dis-cuss case or to be exposed to media accounts of it). Because the jury in this case had not retired to discuss the case, we find the analysis and holding in *Bindyke* inapplicable. We believe the better practice is to instruct the jurors to select a foreperson only upon final submis-sion of the case to the jury; however, we find no prejudicial error here.

### III.

**[3]** Defendant's final argument is that the trial court erred in not granting defendant's motion for a continuance in order to secure the presence of a defense witness, Charles Curtis Atkinson. Defense counsel had been unable to locate Atkinson, and at the time of trial his whereabouts were unknown. Atkinson was alleged by the State to have been defendant's passenger in the truck. Defense counsel informed the court that Atkinson would testify that defendant was not the driver of the truck and, in fact, was not in the truck.

A motion for a continuance is ordinarily addressed to the sound discretion of the trial court and is not subject to review absent a gross abuse of discretion. *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981). However, when such a motion raises a constitutional issue, the trial court's ruling involves a question of law and is fully reviewable by an examination of the particular circumstances of the case. *Id.* Defendant correctly states that the right to present wit-nesses to confront the evidence against him and the right to present a defense are rights protected by our Constitutions. *See State v. Davis*, 61 N.C. App. 522, 525, 300 S.E.2d 861, 863 (1983); *State v. Tunstall*, 334 N.C. 320, 328, 432 S.E.2d 331, 336 (1993). Denial of a motion for a continuance, regardless of its nature, is, however,

grounds for a new trial only upon a showing by defendant that the denial was erroneous and that he was prejudiced thereby. *Searles*, 304 N.C. at 153, 282 S.E.2d at 433.

In the case at hand, trial was originally set for Monday, 28 June 1993, but was delayed until 30 June because defendant failed to appear. As of 28 June, Atkinson's whereabouts were unknown, and no subpoena for Atkinson had been issued prior to that day. Defense counsel stated to the court that Atkinson had "just sort of disappeared" and that if subpoenaed for another trial date, "he might not show up." Under these circumstances, we conclude that it was not error for the trial court to deny defendant's motion for a continuance. *See State v. Horne*, 21 N.C. App. 197, 200-01, 203 S.E.2d 636, 638 (1974) (no error where defense waited until day of trial to subpoena absent witness).

Furthermore, defendant suffered no prejudice from the denial of his motion. Defendant testified that he was not driving the truck, but was instead a passenger in another car, driven by Jasper Hollowuay. This testimony was supported by the testimony of Hollowuay, who testified that he picked defendant up on the side of the road and drove him home. The testimony of Charles Atkinson would not have added anything more than corroboration to the defense. Defendant has therefore failed to demonstrate that the lack of Atkinson's testimony was prejudicial to him. *See State v. Highsmith*, 74 N.C. App. 96, 99, 327 S.E.2d 628, 630 (no prejudice where absent witness's testimony would only have added corroboration), *disc. review denied*, 314 N.C. 119, 332 S.E.2d 486 (1985). Defendant is not entitled to a new trial based on the trial court's failure to grant his motion for a continuance.

We find that defendant received a fair trial free from prejudicial error.

No error.

Judges WYNN and McGEE concur.