STATE OF NORTH CAROLINA v. HUGH LOCKLEAR, SR.

No. COA05-1666

(Filed 7 November 2006)

**1. Appeal and Error— appellate rules violations—exercise of discretionary authority to hear appeal**

Despite defendant's violation of several appellate rules, the Court of Appeals exercised is discretion under N.C. R. App. P. 2 to review defendant's arguments raised in his brief and reply brief.

**2. Jury— alternate juror entered jury room—motion for mistrial**

The trial court did not abuse its discretion in a prosecution for felony breaking and entering, felony larceny, and other crimes by denying defendant's motion for a mistrial upon discovering that an alternative juror had entered the jury room, because: (1) a trial will be voided by the appearance of impropriety caused by an alternate juror's presence in the jury room during deliberations; (2) although in the instant case the juror's interaction with the jury occurred after deliberations had begun, the conversation occurred during a lunch break and in the jury assembly room rather than the deliberations room; and (3) the trial court specifically told the jury to cease their deliberations during the break, and jurors are presumed to have followed the trial court's instructions.

STATE v. LOCKLEAR

[180 N.C. App. 115 (2006)]

**3. Evidence— prior crimes or bad acts—prior imprisonment— motive, intent, knowledge, or absence of mistake**

The trial court did not abuse its discretion in a felony break-ing and entering, felony larceny, multiple drug charges, reckless driving, speeding, failure to heed a light or siren, failing to stop for a steady red light, driving the wrong way on a one-way street or road, and assault on a law enforcement animal case by per-mitting the trial to continue after the jury heard evidence from a coparticipant that defendant previously had been imprisoned and did not want to go back, because: (1) defendant's desire to avoid returning to prison constitutes evidence of his motive for the traf-fic violations he committed while fleeing the police and could be reasonably viewed as an acknowledgment of guilt as to the break-ing and entering; (2) the testimony was admissible under N.C.G.S. § 8C-1, Rule 404(b) as proof of motive, intent, knowledge, or ab-sence of mistake; and (3) the trial court in weighing the probative value of the testimony against its potential prejudicial effect excluded testimony concerning defendant's release from prison and issued a limiting instruction to further mitigate against any possible prejudice that such testimony might entail.

**4. Appeal and Error— preservtion of issues—failure to ar-gue—failure to object**

Defendant is deemed to have abandoned his assignment of error to an immunity instruction where he failed to present any argument in his brief relating to the assignment of error. Fur-thermore, defendant waived review of an intent instruction where he failed to object at trial and failed to raise a claim of plain error on appeal.

**5. Criminal Law— instructions—interested witness**

The trial court did not abuse its discretion in failing to give an interested witness instruction where the trial court gave an in-struction concerning the testimony of a witness with immunity with respect to testimony by an accomplice who agreed to plead guilty in exchange for his truthful testimony against defendant; an interested witness instruction was not supported by the evi-dence with respect to another witness; and the trial court prop-erly instructed on the jury's duty to scrutinize the testimony and determine the credibility of witnesses.

**6. Criminal Law— instructions—accomplice testimony**

The trial court did not commit plain error in failing to give a promised instruction on accomplice testimony where the court did instruct the jury that an accomplice "was testifying under an agreement by the prosecutor for a charge reduction" and that the jury "should examine his testimony with great care and caution," and where defendant failed to show a reasonable possibility that a different result would have been reached at trial had the instruction been given.

**7. Criminal Law— instructions—flight—supporting evidence**

The evidence supported the trial court's instruction on flight where the jury reasonably could have found that defendant fled three times after commission of the crimes charged, including while driving a truck and attempting to elude pursuing police vehicles, when he left the truck and ran to a nearby payphone, and when he broke the window of a police vehicle and attempted to escape on foot.

Appeal by defendant from judgments entered 22 August 2005 by Judge J. Gentry Caudill in Gaston County Superior Court. Heard in the Court of Appeals 13 September 2006.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Edwin Lee Gavin, II, for the State.*

*Cheshire, Parker, Schneider, Bryan & Vitale, by John Keating Wiles, for defendant-appellant.*

JACKSON, Judge.

On the evening of 7 June 2004, Eric Prine ("Prine") was driving on Franklin Boulevard in Gastonia with his girlfriend, Tashia Clontz ("Clontz"), as his passenger. Prine and Clontz saw a man breaking out the glass window in a pharmacy and exiting the pharmacy, along with another man. Both of the men were carrying boxes and bottles. Prine and Clontz also saw a third man waiting in a nearby truck, and they watched as the three men drove off in the truck. Prine telephoned the police, who instructed him to follow the truck and obtain the vehicle's license plate number. Prine and Clontz followed the truck onto the highway, pulled up alongside the truck, and observed that Hugh Locklear, Sr. ("defendant") was driving. Law enforcement officials soon caught up with the truck, and the truck, pursued by the police, sped off the highway at an exit and ran off the road.

With the truck at rest on an embankment, the three men fled the vehicle, and police officers pursued on foot. Officers quickly apprehended one of the men—Hugh Locklear, Jr.—during the pursuit. Another officer, who circled the area in his vehicle, spotted a white male using a payphone and wearing dark clothing similar to that worn by the driver of the truck. The officer approached the man, who was breathing heavily and sweating, and asked him for identification. The man presented the officer with Florida identification for Hugh Locklear (defendant). Defendant complied with the officer's request to return to the truck, where a witness identified him as the driver. The officer arrested, handcuffed, and placed defendant in the officer's vehicle.

The same officer then searched the truck and found four bottles of Hydrocodone pills, along with an occupational tax certificate for Hugh Locklear, on the floor of the truck. These bottles were similar to bottles recovered from a black bag that Hugh Locklear, Jr. had been carrying when he fled the truck.

Upon returning to the police vehicle, the officer discovered that the back rear glass had been broken out and that defendant was gone. The officer obtained the assistance of two other officers, including a K-9 officer, in locating defendant. After being found by the officers, defendant became belligerent and lunged and growled at the K-9 officer's dog. Defendant spit on two police officers as they placed him into another police vehicle.

Prine and Clontz arrived at the scene shortly after defendant and the two other men had fled the vehicle. When the police returned with two men, Prine and Clontz identified defendant and Hugh Locklear, Jr. as having been in the truck. Specifically, they identified defendant as the driver of the truck and one of the two men who exited through the pharmacy's broken window. Prine and Clontz again identified defendant when later presented with photographs by law enforcement officials. Further investigation later revealed a third individual, Harry Carl Sapp, Jr. ("Sapp"), as the man who had been waiting in the truck at the pharmacy.

Officers ultimately retrieved a total of ten sealed containers of controlled substances from the scene—the same number of pill bottles that the owner of the pharmacy reported missing. This included three bottles of 1,000 7.5-milligram dosages of Hydrocodone, three bottles of 1,000 ten-milligram dosages of Hydrocodone, three bottles of 1,000 1000-milligram dosages of Propoxyphene Napsylate, and one

bottle of 1,000 ten-milligram dosages of Hydrocodone of a different composition than that contained in the three bottles above. In total, there were 5,600 grams of Hydrocodone, a Schedule III substance also known as Vicodin, and 2,800 grams of Propoxyphene Napsylate, a Schedule IV substance also known as Darvocet.

On 19 August 2005, the jury found defendant guilty of the following charges: felony breaking and entering; felony larceny; trafficking opiates by possession; trafficking opiates by transportation; possession of Darvocet; possession with intent to manufacture, sell, or deliver Darvocet; maintaining a vehicle, dwelling, or place for controlled substances; reckless driving; speeding; failing to heed a light or siren; failing to stop for a steady red light; driving the wrong way on a one-way street or road; and assault on a law enforcement animal. The trial court imposed a sentence of 225 to 275 months imprisonment and a fine of $500,000.00. Defendant gave timely notice of appeal to this Court.

**[1]** As a preliminary matter, we note that defendant's brief violates the North Carolina Rules of Appellate Procedure. As required pursuant to Rule 28, "[t]he body of the argument . . . shall contain citations of the authorities upon which the appellant relies." N.C. R. App. P. 28(b)(6) (2006). Defendant's brief fails to include any citations to statutes or case law to support his third argument. He provides supporting authority for his proposed standard of review, but in the discussion section of his argument, his only citation is a generalized reference to the Fifth and Fourteenth Amendments of the U.S. Constitution and to Article I of the North Carolina Constitution. As defendant fails to cite any legal authority in support of his third argument, that argument may be deemed abandoned.

Furthermore, defendant's brief fails to contain "[a] statement of the grounds for appellate review." N.C. R. App. P. 28(b)(4) (2006). The Rules of Appellate Procedure also provide that this required statement "shall include citation of the statute or statutes permitting appellate review." *Id.* Defendant has failed to include this short yet significant section in his brief, and thus, the instant case is not properly before this Court. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (noting that "[i]t is not the role of [our state's] appellate courts to create an appeal for an appellant."), *reh'g denied*, 359 N.C. 643, 617 S.E.2d 662 (2005).

It is well-established that "[t]he North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will sub-

ject an appeal to dismissal.' " *Id.* at 401, 610 S.E.2d at 360 (quoting *Steingress v. Steingress*, 350 N.C. 64, 65, 511 S.E.2d 298, 299 (1999)). Nevertheless, in our discretion, we will review defendant's arguments raised in his brief and reply brief. *See* N.C. R. App. P. 2 (2006).

**[2]** In his first argument, defendant contends that the trial court abused its discretion in denying defendant's motion for a mistrial upon discovery that an alternate juror had entered the jury room. We disagree.

Our Supreme Court has held "that at any time an alternate is in the jury room *during deliberations* he participates by his presence and, whether he says little or nothing, his presence will void the trial." *State v. Bindyke*, 288 N.C. 608, 627-28, 220 S.E.2d 521, 533 (1975) (emphasis in original). The Court later clarified that "[a]t the heart of the Court's holding in *Bindyke* was the appearance of impropriety during the *deliberations* of the jury." *State v. Kennedy*, 320 N.C. 20, 30, 357 S.E.2d 359, 365 (1987) (emphasis in original). Since *Bindyke* and *Kennedy*, we have emphasized consistently the requirement of the alternate's presence "during deliberations." *See, e.g., State v. Jernigan*, 118 N.C. App. 240, 246, 455 S.E.2d 163, 167 (1995); *State v. Najewicz*, 112 N.C. App. 280, 290-91, 436 S.E.2d 132, 138-39 (1993), *disc. rev. denied*, 335 N.C. 563, 441 S.E.2d 130 (1994). Additionally, our Supreme Court has stated that " 'where the alternate's presence in the jury room is inadvertent and momentary, and it occurs under circumstances from which it can be clearly seen or immediately determined that the jury has not begun its function,' the alternate's presence will not void the trial." *State v. Parker*, 350 N.C. 411, 426, 516 S.E.2d 106, 117 (1999) (quoting *Bindyke*, 288 N.C. at 628, 220 S.E.2d at 533-34), *cert. denied*, 528 U.S. 1084, 145 L. Ed. 2d 681 (2000).

In the present case, the alternate juror spoke with four members of the jury after deliberations had begun. She explained to them that she had been excused, and she told them goodbye. She also informed them that defense counsel had approached her and asked for her feelings about the trial. The alternate juror testified, however, that she did not express any feeling about the case to the attorney, nor did she express her feelings about the case to the other jurors.

Although the alternate juror's interaction with the jury occurred after deliberations had begun, the conversation occurred during a lunch break and in the jury assembly room, *not* the deliberations room. Additionally, the trial court specifically told the jury to cease their deliberations during the break, and "jurors are presumed to

have followed the trial court's instructions." *Id.* Much as the Supreme Court held in *Parker*, because the alternate juror was not present during deliberations, there is no prejudicial error. *See id.* Accordingly, we hold the trial court did not err in denying defendant's motion for a mistrial, and this assignment of error is overruled.

**[3]** Defendant next contends that the trial court abused its discretion in permitting the trial to continue after the jury heard evidence that defendant previously had been imprisoned. As our Supreme Court has stated,

> [i]t is well settled that in the trial of one accused of a criminal offense, who has not testified as a witness in his own behalf, the State may not, over objection by the defendant, introduce evidence to show that the accused has committed another independent, separate criminal offense where such evidence has no other relevance to the case on trial than its tendency to show the character of the accused and his disposition to commit criminal offenses.

*State v. Perry*, 275 N.C. 565, 570, 169 S.E.2d 839, 843 (1969).

Here, Sapp testified he had known defendant his whole life, but his interaction with defendant was limited and intermittent as defendant had "been in prison and then get out [sic], and he'd go to Georgia and then come back." Defendant did not object to this statement. Sapp also mentioned that he had learned that defendant had been released from jail, but before he finished his statement, defendant objected. The court ruled that the probative value of such evidence was outweighed by the risk of prejudice to defendant, and thus, the court ruled the statement inadmissible. *See* N.C. Gen. Stat. § 8C-1, Rule 403 (2005). Additionally, the trial judge instructed the jury to disregard the testimony. Later in his testimony, however, Sapp explained that when defendant realized the police were pursuing the truck, defendant stated he was not going back to prison. Defendant objected, but the trial court found such evidence admissible. On appeal, defendant contends the evidence that defendant did not want to return to prison should have been ruled inadmissible as irrelevant pursuant to Rule 402 and as overly prejudicial pursuant to Rule 403 of the North Carolina Rules of Evidence. *See* N.C. Gen. Stat. § 8C-1, Rules 402-03 (2005).

First, defendant's challenge, on relevancy grounds, to Sapp's testimony concerning defendant's desire not to return to prison is with-

out merit. " 'Relevant evidence' means evidence having any tendency to make the existence of a fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C. Gen. Stat. § 8C-1, Rule 401 (2005). Evidence that is not relevant must be excluded pursuant to Rule 402. *See* N.C. Gen. Stat. § 8C-1, Rule 402 (2005). Here, defendant's desire to avoid returning to prison constitutes evidence of his motive for the traffic violations he committed while fleeing the police and could be reasonably viewed as an acknowledgment of guilt as to the breaking and entering. As defendant contested his guilt with regard to those crimes, evidence indicating his likely motive was relevant.

Establishing that Sapp's testimony was relevant is but a threshold question. Ordinarily, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith." N.C. Gen. Stat. § 8C-1, Rule 404(b) (2005). Although defendant neither objected to Sapp's testimony on Rule 404(b) grounds nor argued such in his brief, we note that Sapp's testimony concerning defendant's previous imprisonment nevertheless would be admissible under Rule 404(b) "as proof of motive, . . . intent, . . . knowledge, . . . or absence of mistake." *Id.*

As our Supreme Court has noted, "Rule 404(b) is a rule of inclusion, subject to the single exception that such evidence must be excluded if its *only* probative value is to show that [a] defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Berry*, 356 N.C. 490, 505, 573 S.E.2d 132, 143 (2002) (emphasis in original). Thus, even if evidence of a prior crime survives Rule 404(b), it still must withstand the balancing test of Rule 403, pursuant to which "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." N.C. Gen. Stat. § 8C-1, Rule 403 (2005). It is well-settled that "[a] trial court has discretion whether or not to exclude evidence under Rule 403, and a trial court's determination will only be disturbed upon a showing of an abuse of that discretion." *State v. Grant*, 178 N.C. App. 565, 573, 632 S.E.2d 258, 265 (2006) (citing *State v. Campbell*, 359 N.C. 644, 674, 617 S.E.2d 1, 20 (2005), *cert. denied*, 547 U.S. 1073, 164 L. Ed. 2d 523 (2006)). "An abuse of discretion will be found only 'where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.' " *In re K.T.L.*, 177 N.C. App. 365, 370, 629 S.E.2d 152, 156 (2006) (quoting *Campbell*, 359 N.C. at 673, 617 S.E.2d at 19).

STATE v. LOCKLEAR

[180 N.C. App. 115 (2006)]

Here, the trial court, cognizant of the potential prejudicial effect of evidence of prior crimes, excluded Sapp's testimony concerning defendant's release from prison. The court also issued a limiting instruction to further mitigate against any possible prejudice that such testimony might entail. The trial court, however, found that the evidence of defendant's statements concerning prison while he was fleeing from police was admissible. We hold the trial court's ruling was the product of a reasoned decision in weighing the probative value of the testimony against its potential prejudicial effect, and accordingly, the trial court did not err in admitting the evidence. Therefore, this assignment of error is overruled.

In his final argument, defendant consolidates several assignments of error and contends the trial court erred in issuing certain jury instructions. Specifically, defendant assigns error to the flight instruction, the interested witness instruction, the accomplice testimony instruction, the immunity or quasi-immunity instruction, and the intent instruction.

**[4]** First, defendant has failed to present any argument in his brief relating to the assignment of error to the immunity instruction. Accordingly, this assignment of error is deemed abandoned. *See* N.C. R. App. P. 28(b)(6) (2006).

Turning to the intent instruction, defendant contends that he was prejudiced when the court's instruction spoke of "attempt" rather than "intent." The trial court instructed the jury that

[a]ttempt [sic] is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be adduced. You arrive at the intent of a person by such just and reasonable deductions from the circumstances proven as a reasonably prudent person would ordinarily draw therefrom.

Defendant did not object to this instruction at trial, and where, as in the case *sub judice*, "a defendant fails to object to jury instructions at trial, we review the instruction challenged on appeal under the plain error doctrine." *State v. Huff*, 325 N.C. 1, 58, 381 S.E.2d 635, 668 (1989), *vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990). Pursuant to the plain error doctrine, this Court's review is limited only to those errors which were so fundamental and so prejudicial as to result in the denial of a fundamental right or a miscarriage of justice. *See State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378

(1983). Defendant, however, has failed to argue plain error on appeal. Our Supreme Court has held that a defendant who merely used the words "plain error," without offering any explanation or argument in support of such review, "ha[d] effectively failed to argue plain error and ha[d] thereby waived appellate review." *State v. Cummings*, 352 N.C. 600, 637, 536 S.E.2d 36, 61 (2000), *cert. denied*, 532 U.S. 997, 149 L. Ed. 2d 641 (2001). Here, defendant has not even stated that review is for plain error, much less has defendant provided any justification for such review. Accordingly, defendant has waived his argument concerning the intent instruction.

**[5]** Defendant also contends that the trial court erred in refusing to issue an interested witness instruction, which defendant orally requested during the charge conference. As this Court recently noted,

> [a] request for special instructions to a jury must be: (1) In writing, (2) Entitled in the cause, and (3) Signed by counsel submitting them. Where a requested instruction is not submitted in writing and signed . . ., it is within the discretion of the [trial] court to give or refuse such instruction.

*State v. Mewborn*, 178 N.C. App. 281, 291-92, 631 S.E.2d 224, 231 (2006) (first alteration added), appeal dismissed and *disc. rev. denied*, 360 N.C. 652, 637 S.E.2d 187 (2006). Because defendant did not submit the interested witness instruction in writing and signed, "our standard of review is abuse of discretion." *Id.* Furthermore, even if the trial court abused its discretion, "defendant is entitled to a new trial only if there is a reasonable probability that, had the abuse of discretion not occurred, a different result would have been reached at trial." *Id.* (citing N.C. Gen. Stat. § 15A-1443(a) (2005)).

North Carolina Pattern Jury Instruction 104.20, the interested witness instruction requested by defendant, states:

> You may find that a witness is interested in the outcome of this trial. In deciding whether or not to believe such a witness, you may take his interest into account. If, after doing so, you believe his testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

N.C.P.I. Crim. 104.20 (1970). Defendant requested the instruction to ensure the jury carefully scrutinized the testimony of both Sapp, an accomplice to the crime, and Prine, who was awaiting a court appearance for a probation violation at the time of defendant's trial.

**STATE v. LOCKLEAR**

[180 N.C. App. 115 (2006)]

Although the trial court did not give the specific instruction requested by defendant, the trial court instead instructed the jury in accordance with North Carolina Pattern Jury Instruction 104.21, which concerns the testimony of a witness with immunity or quasi-immunity:

> There is evidence which tends to show that a witness was testifying under an agreement by the prosecutor for a charge reduction in exchange for his testimony and under agreement by the prosecution for a recommendation for sentence concessions in exchange for his testimony. If you find that he testified in whole or in part for this reason, you should examine his testimony with great care and caution in deciding whether or not to believe it. If, after doing so, you believe his testimony in whole or in part, you should treat what you believe the same as any other believable evidence.

This instruction applies squarely to Sapp, who agreed to plead guilty in exchange for his truthful testimony against defendant. Accordingly, defendant's argument with respect to Sapp's testimony is without merit.

With respect to Prine's testimony, the requested interested witness instruction was not supported by the evidence. *See Mewborn*, 178 N.C. App. at 291-92, 631 S.E.2d at 231. Although Prine was awaiting a court appearance for a probation violation at the time of defendant's trial, there is no evidence that Prine was promised or even offered any concessions in exchange for his testimony against defendant. Prine's probation violation was unrelated to defendant's charges, and defendant's contention that Prine's testimony, "as well as that of his girlfriend [Clontz], might have been given under the influence of their interest in currying favor with the State in hopes of securing a more favorable outcome on the pending probation violations" is based on pure speculation. Moreover, defendant had the opportunity to cross-examine Prine regarding any potential interest or bias and to argue to the jury that the veracity of Prine's testimony should be discounted accordingly. *See Mewborn*, 178 N.C. App. at 292, 631 S.E.2d at 232. Just as in the present case, our Supreme Court emphasized in an opinion by now-Chief Justice Parker that an alleged interested witness "was not charged with any offense related to this crime, she was not testifying pursuant to a plea agreement or a grant of immunity, and nothing other than the probation violation suggested that she had an interest in the outcome of this case." *State v.*

*Dale*, 343 N.C. 71, 78, 468 S.E.2d 39, 44 (1996). The jury in the case *sub judice* was instructed as follows:

> You are the sole judges of the credibility of each witness. You must decide for yourselves whether to believe the testimony of any witness. You may believe all or any part or none of what a witness has said on the stand. In determining whether you believe any witness, you should use the same tests of truthfulness which you use in your everyday affairs . . . includ[ing] the opportunity of the witness to see, hear, know, or remember the facts or occurrences about which he testified; the manner and appearance of the witness; *any interest, bias, or prejudice the witness may have*; the apparent understanding and fairness of the witness; and whether the witness's testimony is reasonable and whether his testimony is consistent with other believable evidence in the case.

(emphasis added). Such an instruction was sufficient to ensure that the jury carefully evaluated Prine's testimony, Clontz' testimony, and the testimony of the other witnesses, and accordingly, this assignment of error is overruled.

**[6]** Defendant's challenge to the accomplice testimony instruction also is without merit. Defendant contends that the trial court failed to keep its commitment to give an instruction on accomplice testimony. During the charge conference, defense counsel stated his request for an instruction concerning interested witnesses. The trial court suggested that

> perhaps the appropriate instruction that would be in line with your request about interested is accomplice testimony for the prosecution, 104.25. Just ask you to consider that. It reads that:

>> There's evidence which tends to show that a witness was an accomplice in the commission of the crime charged in this case or crimes charged in this case. An accomplice is a person who joins with another in the commission of a crime. The accomplice may actually take part in acts necessary to accomplish the crime or he may knowingly help encourage another in the crime either before or during its commission. An accomplice is considered by the law to have an interest in the outcome of the case. You should examine every part of the testimony of such witness with the greatest care and caution. If, after doing so, you believe his testimony in whole or

STATE v. LOCKLEAR

[180 N.C. App. 115 (2006)]

in part, you should treat what you believe the same as any other believable evidence.

What do you say to that?

We first note that although defendant did not object during the jury instructions to the trial court's failure to give the accomplice testimony instruction, our Supreme Court has "held that a request for an instruction at the charge conference is sufficient compliance with the [Rules of Appellate Procedure] to warrant our full review on appeal where the requested instruction is subsequently promised but not given." *State v. Ross*, 322 N.C. 261, 265, 367 S.E.2d 889, 891 (1988). Although defendant did not request the instruction, the trial court offered to give it on defendant's behalf, and defendant, in turn, stated that he had no objection and that he "appreciated" the judge's mentioning that instruction. Accordingly, it appears that the issue was preserved for review by this Court.

Although the trial court failed to give the accomplice testimony instruction as promised, defendant has failed to show "a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." N.C. Gen. Stat. § 15A-1443(a) (2005). The evidence of defendant's guilt was "comprehensive and substantial," *State v. Alexander*, 337 N.C. 182, 193, 446 S.E.2d 83, 90 (1994), as several eyewitnesses and police officers testified to defendant's guilt. Additionally, the trial court instructed the jury "that a witness [Sapp] was testifying under an agreement by the prosecutor for a charge reduction" and that the jury "should examine his testimony with great care and caution." Although the wording of this instruction does not match that of the accomplice testimony instruction, which defendant requested after the court's suggestion, the substance of the instruction given was designed to alleviate defendant's concerns and ensure that the jury carefully scrutinized Sapp's testimony. It is well-settled that "the [trial] court is not required to charge in the exact language of the request but need only give the instruction in substance." *State v. Irwin*, 304 N.C. 93, 100, 282 S.E.2d 439, 445 (1981). Accordingly, any oversight committed by the trial court does not rise to the level of plain error, and thus, this assignment of error is overruled.

[7] The final jury instruction attacked by defendant on appeal is the flight instruction. During the charge conference, defendant objected to the State's request for a flight instruction, and the trial court overruled his objection. The trial court instructed the jury that

[t]he state contends and the defendant denies that the defendant fled. Evidence of flight may be considered by you together with all other facts and circumstances in this case in determining whether or not the combined circumstances amount to an admission or show a consciousness of guilt.

It is well-established that "[a] trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence." *State v. Haywood*, 144 N.C. App. 223, 234, 550 S.E.2d 38, 45, *appeal dismissed and disc. rev. denied*, 354 N.C. 72, 553 S.E.2d 206 (2001). Our Supreme Court has stated that

[a] trial court may properly instruct on flight where there is some evidence in the record reasonably supporting the theory that the defendant fled after the commission of the crime charged. However, mere evidence that defendant left the scene of the crime is not enough to support an instruction on flight. There must also be some evidence that defendant took steps to avoid apprehension.

*State v. Lloyd*, 354 N.C. 76, 119, 552 S.E.2d 596, 625-26 (2001) (internal citations and quotation marks omitted).

In the case *sub judice*, defendant objected to the flight instruction on the ground that there was insufficient evidence to support the instruction. The record, however, shows that: (1) defendant was driving the truck while being pursued by police vehicles with blue lights and sirens operating; (2) when defendant noticed the police, he stated he was not going back to prison; (3) the truck swerved off the highway; (4) the truck was speeding; (5) the truck was traveling down the wrong side of the road; (6) defendant left the truck and was found at a nearby payphone, breathing heavily and sweating; and (7) defendant broke out one of the rear windows of the police vehicle and escaped from the vehicle on foot, only to be caught by police officers and a police dog moments later. From this evidence, the jury reasonably could have found that defendant fled not merely once but three times after the commission of the crime charged: first, while driving the truck and attempting to elude the pursuing police vehicles; again, when he left the truck and ran to a nearby payphone; and once more when he broke the window of the police vehicle and attempted to escape on foot. Regardless, " '[t]he fact that there may be other reasonable explanations for defendant's conduct does not render the instruction improper.' " *State v. Ethridge*, 168 N.C. App. 359, 363, 607 S.E.2d 325, 328 (2005) (quoting *State v. Irick*, 291 N.C.

480, 494, 231 S.E.2d 833, 842 (1977)), *aff'd*, 360 N.C. 359, 625 S.E.2d 777 (2006) (per curiam). As competent evidence supported the flight instruction, defendant's argument is without merit.

Defendant's additional assignments of error that have not been presented and argued in his brief are deemed abandoned. N.C. R. App. P. 28(a) (2006).

No error.

Judges CALABRIA and GEER concur.