629 S.E.2d 152 (2006)
In the Matter of K.T.L.
No. COA05-667.
Court of Appeals of North Carolina.
May 2, 2006.
Attorney General Roy A. Cooper, III, by Assistant Attorney General M. Lynne Weaver, for the State.
Sofie W. Hosford, Wilmington, for juvenile-appellant.
*154 JACKSON, Judge.
Malik Beverly ("Malik"), age three, was reported missing by his babysitter on 2 September 2004 shortly after 7:30 p.m. Malik, who was being cared for while his mother was at work, had been outside playing much of the afternoon with his older sister. The two had been seen playing around various homes in the trailer park, and at one point were seen pouring water from a bucket into an open septic tank in the yard of one of the trailers. This particular septic tank was damaged and did not have a proper cover. It usually was covered with a large piece of plywood with a rock on top of the plywood. K.T.L. ("juvenile"), who was then eight years old, lived in the same trailer park in which Malik and his sister were playing, and he was seen playing with the two children at about 6:50 p.m. that evening.
After a search of the trailer park, police and residents found Malik's body floating in the septic tank into which he previously had been seen pouring water with his sister. The septic tank had been covered by an eighteen pound piece of plywood, which had a thirty pound rock and bucket, containing about an inch of water, sitting atop the plywood. An autopsy determined that the cause of Malik's death was drowning. The autopsy revealed a bruise on the top of Malik's head which appeared to have resulted from a blunt force injury, and would not have been consistent with a fall. Malik's body also showed a scrape about two and one half inches long on the front of his stomach, which was indicative of his having been moved over a slightly rough surface, such as pavement or concrete.
On 3 September 2004, Dayquan Bazemore, a fifth grader at juvenile's school, was on juvenile's school bus when juvenile asked Dayquan if he had heard what happened the night before. Dayquan testified that juvenile stated that he and a little boy had been playing, and that after beginning to fight juvenile "slammed him in the road." Dayquan stated that juvenile then told him that juvenile "thought he was dead so I drug him over to the septic tank and threw him in." Dayquan testified that juvenile had a smile on his face while he was talking.
Monisha Holley, also a fifth grader, was on the same bus as Dayquan and juvenile on the morning of 3 September 2004. When she boarded the bus, she asked Dayquan and juvenile if they had heard what happened the night before. Juvenile responded "Yes," to which Dayquan asked juvenile why he had *155 done that to him, referring to the little boy. Juvenile told the two fifth graders that "I didn't do nothing to him, I was just beating him up." Dayquan asked juvenile "Well how did he die then?," to which juvenile replied, "Because I threw him in the septic tank." Monisha testified that shortly thereafter, she heard juvenile and Dayquan talking and that juvenile stated that it was funny when he threw him, referring to the little boy, into the septic tank. Monisha also stated that juvenile sometimes liked to brag to the other children, and that in the past he had threatened children on the school bus.
On 20 September 2004, the State issued a juvenile petition against juvenile, charging him with involuntary manslaughter in violation of North Carolina General Statutes, section 14-18. On 22 September 2004, the State called juvenile's case for a hearing, at which time juvenile and the State jointly moved that the hearing be closed. Following testimony from a detective and juvenile's mother, the trial court denied the parties' motions and ordered juvenile's hearing to be open to the public.
After three days of evidence, the trial court adjudicated juvenile delinquent on 3 November 2004, finding that he had committed the offense of involuntary manslaughter. Juvenile was ordered to remain in custody pending his dispositional hearing, so that he could receive a comprehensive evaluation of his needs. On 30 November 2004 the trial court heard evidence from both parties regarding disposition, and announced that it would issue its decision by written order to be entered on 21 December 2004. Juvenile was ordered to remain in secure custody pending the entry of the disposition order.
On 21 December 2004, the court entered its disposition order, and ordered that juvenile be placed in the custody of Bertie County Department of Social Services ("DSS") so that he could be placed in a Level III or IV residential treatment facility that provided 24-hour monitoring for a period not to exceed 90 days. The purpose of this placement was so that juvenile's emotional needs could be evaluated throughly, and so that the court could make a well-informed decision regarding juvenile's final disposition. Juvenile also was placed on intensive probation for one year. The court ordered the matter to be reviewed on 28 February 2005, at which time the court would be presented with the results of juvenile's evaluation, including recommendations as to treatment and placement necessary to meet juvenile's emotional needs. Juvenile appeals from both the adjudication and dispositional orders.
We begin by noting that juvenile asserts ten assignments of error in the record on appeal, however he presents arguments as to only four of the assignments of error in his brief. The remaining six assignments of error, for which no argument was presented, are therefore deemed abandoned. N.C. R.App. P. 28(b)(6) (2005).
In his first assignment of error, juvenile asserts the trial court erred in finding he was delinquent, based on the State's failure to present sufficient evidence that he committed the offense of involuntary manslaughter. In order to challenge the sufficiency of the evidence, a juvenile may make a motion to dismiss the petition at the close of the State's evidence during the adjudicatory hearing. In re Clapp, 137 N.C.App. 14, 19, 526 S.E.2d 689, 693 (2000); In re Davis, 126 N.C.App. 64, 65-66, 483 S.E.2d 440, 441 (1997). "However, if a defendant [or juvenile] fails to move to dismiss the action ... at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged." N.C. R.App. 10(b)(3) (2005); see also, In re Hartsock, 158 N.C.App. 287, 291, 580 S.E.2d 395, 398 (2003); In re Lineberry, 154 N.C.App. 246, 249, 572 S.E.2d 229, 232 (2002), cert. denied, 356 N.C. 672, 577 S.E.2d 624 (2003). In the instant case, juvenile failed to make a motion to dismiss the petition at the close of all evidence, thus waiving his right to challenge the sufficiency of the evidence against him. As juvenile has failed to preserve his right to appeal on this issue, this assignment of error is dismissed.
Juvenile next contends the trial court abused its discretion in denying his motion to close juvenile's delinquency hearing to the public. At juvenile's first appearance on 22 September 2004, both juvenile and the State *156 moved for the hearings to be closed to the public. After hearing testimony from juvenile's mother and a detective who investigated the death of Malik Beverly, the trial court denied the parties' motions and ruled that juvenile's hearing would be open pursuant to North Carolina General Statutes, section 7B-2402.
North Carolina General Statutes, section 7B-2402 provides that all juvenile hearings will "be open to the public unless the court closes the hearing or part of the hearing for good cause, upon motion of a party or its own motion." N.C. Gen.Stat. § 7B-2402 (2004). The trial court must consider a number of factors in determining whether good cause exists for the hearing to be closed. Factors to be considered by the court include, but are not limited to:
(1) The nature of the allegations against the juvenile;
(2) The age and maturity of the juvenile;
(3) The benefit to the juvenile of confidentiality;
(4) The benefit to the public of an open hearing; and
(5) The extent to which the confidentiality of the juvenile's file will be compromised by an open hearing.
Id. The decision to close a juvenile hearing to the public is one that lies within the discretion of the trial court. In re Potts, 14 N.C.App. 387, 391-92, 188 S.E.2d 643, 646, cert. denied, 281 N.C. 622, 190 S.E.2d 471 (1972). An abuse of discretion will be found only "`where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision.'" State v. Campbell, 359 N.C. 644, 673, 617 S.E.2d 1, 19 (2005) (quoting State v. Hennis, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988)).
During the hearing on juvenile's motion to close the hearings to the public, the detective, who investigated and handled the case involving the death of Malik Beverly, stated that there were approximately seventy-five people who lived in the trailer park where Malik's body was found. He stated that the circumstances surrounding Malik's death had become known within the community, and that the death and details surrounding it had been reported by both the local television and print media. After the petition had been drawn charging juvenile with the offense, the detective received numerous calls from citizens in the community asking about the case and saying that they had heard about it on the news. The detective also stated that juvenile lives in the trailer park where Malik's body was found. Juvenile's mother, who presented brief testimony during the hearing, stated that she likely would not return juvenile to the public school once he is released.
Following the testimony, the trial court made detailed findings of fact concerning the facts of the case, the media coverage of it, and the fact that the general public in the community is not only aware of the case, but also that juvenile has been charged with killing Malik. The court went on to conclude as a matter of law, that it had considered each of the factors listed in North Carolina General Statutes, section 7B-2402, and that after weighing the factors, there was insufficient cause to close juvenile's hearing and good cause existed to keep the hearing open to the public. We hold the trial court conducted a thorough hearing on the issue as to whether or not to close juvenile's hearing, in that the court heard arguments from both parties and testimony from the detective and juvenile's mother. After reviewing the evidence, the trial court exercised its discretion and denied the parties' motions. We hold that the trial court's ruling is not one that is manifestly unsupported or arbitrary, and as such, we hold the trial court did not abuse its discretion in denying parties' motions to close juvenile's hearings to the public.
Finally, juvenile argues he was confined unlawfully and that the trial court's 21 December 2004 dispositional order should be vacated. Juvenile's assignment of error on this issue states that "[t]he trial court erred when it ordered the juvenile detained pending appeal and/or other placement." The assignment of error specifically references only the 21 December 2004 dispositional order, in which the trial court ordered juvenile to be placed in the custody of DSS, with placement in a residential treatment facility *157 for no more than ninety days, and that pending this placement, juvenile was to remain in secure custody.
On appeal, juvenile address three separate instances of confinement in his brief, and presents arguments that each of them was unlawful. Specifically, juvenile contends that he was subjected to three separate instances of unlawful confinement: (1) from the trial court's 3 November 2004 adjudication order until the 30 November 2004 dispositional hearing; (2) from the 30 November 2004 dispositional hearing until the entry of the court's 21 December 2004 dispositional order; and (3) from the entry of 21 December 2004 dispositional order until the 28 February 2005 review hearing. As juvenile's assignment of error only addresses the third instance of confinement, the confinement from the entry of the 21 December 2004 disposition order until the 28 February 2005 review hearing, the issues of juvenile's confinement post-adjudication and leading up to the entry of the dispositional order are beyond the scope of juvenile's assignment of error. Therefore, we hold juvenile has failed to preserve his appeal on the prior instances of confinement, and the issues of juvenile's confinement prior to the entry of the dispositional order are not properly before this Court. N.C. R.App. P. 10(a) (2005) ("the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal"); State v. Wiggins, 161 N.C.App. 583, 591, 589 S.E.2d 402, 408 (2003) ("To the extent defendant raised arguments in his brief beyond the scope of this assignment of error, they are not properly before this Court."). Thus, we need only address juvenile's confinement following the entry of the dispositional order.
On 21 December 2004, the trial court entered a "Level I and Level II Delinquency Disposition Order" stating, inter alia, that: (1) juvenile was to be placed on intensive probation for one year, terminating on 21 December 2005; (2) juvenile was to be placed in the custody of DSS; (3) juvenile was to be placed in a Level III or IV residential treatment facility that provides twenty-four-hour monitoring for a period not to exceed ninety days, in order for his emotional needs to be evaluated; (4) pending placement in the residential treatment facility, juvenile was to be retained in secure custody pursuant to section 7B-1903(c); (5) at a review hearing to be held 28 February 2005, the court was to be provided with the results of juvenile's evaluation and recommendations as to placement necessary to meet juvenile's emotional needs; and (6) juvenile was ordered to complete fifty hours of community service, remain on good behavior and not violate any laws, not possess any firearms, and submit to warrantless searches for firearms at reasonable times.
The offense for which juvenile was adjudicated delinquent was involuntary manslaughter, a Class F offense, which is considered a "serious" offense pursuant to our Juvenile Code. N.C. Gen.Stat. § 7B-2508(a)(2) (2004). The trial court found that juvenile had no prior history of delinquency, and that based on the provisions of section 7B-2507, juvenile's delinquency history level was determined to be low. Therefore, pursuant to section 7B-2508(f), juvenile could be sentenced under either a Level 1 or Level 2 disposition. N.C. Gen.Stat. § 7B-2508(f) (2004).
Level 2 dispositions, as provided for by section 7B-2508(d), allow a trial court, with jurisdiction over a juvenile who has been adjudicated delinquent and found to be subject to a Level 2 disposition, to
provide for evaluation and treatment under [N.C. Gen.Stat. §] 7B-2502 and for any of the dispositional alternatives contained in subdivisions (1) through (23) of [N.C. Gen. Stat. §] 7B-2506, but shall provide for at least one of the intermediate dispositions authorized in subdivisions (13) through (23) of [N.C. Gen. Stat. §] 7B-2506.
N.C. Gen.Stat. § 7B-2508(d) (2004). North Carolina General Statutes, section 7B-2506 provides numerous dispositional alternatives from which a court may choose once a juvenile has been adjudicated delinquent. See, N.C. Gen.Stat. § 7B-2506 (2004). Specifically, section 7B-2506(1)(c) provides as one dispositional alternative available to the trial court:

*158 In the case of any juvenile who needs more adequate care or supervision or who needs placement, the judge may:
. . .
c. Place the juvenile in the custody of the department of social services in the county of his residence. . . . An order placing a juvenile in the custody or placement responsibility of a county department of social services shall contain a finding that the juvenile's continuation in the juvenile's own home would be contrary to the juvenile's best interest. This placement shall be reviewed in accordance with [N.C. Gen. Stat. §] 7B-906.
N.C. Gen.Stat. § 7B-2506(1)(c) (2004). Section 7B-906 provides that in all cases "where custody is removed from a parent . . . the court shall conduct a review hearing within 90 days from the date of the dispositional hearing. . . ." N.C. Gen.Stat. § 7B-906(a) (2004).
In the present case, the trial court's detailed dispositional order removed custody of juvenile from his parents, and placed him in the custody of DSS. The trial court did so based on its finding that it was contrary to juvenile's best interest for him to return home at the time, and the fact that his parents were not willing to authorize his placement in a facility that provided twenty-four-hour monitoring so that he could obtain further evaluation. The trial court found that when placed in the custody of DSS, DSS would then have the authority to authorize and consent to juvenile's placement for further evaluation of his emotional needs. Upon removing juvenile from the custody of his parents and granting custody to DSS, the trial court ordered a review hearing to be held on 28 February 2005, at which time juvenile's emotional needs would be assessed and the court would determine if further treatment was needed. We hold the trial court was authorized to grant custody of juvenile to DSS for purposes of obtaining necessary evaluation and treatment pursuant to section 7B-2506(1)(c), and further, the trial court complied with the requirements of section 7B-906 by ordering that a review hearing take place within ninety days of the 30 November 2004 dispositional hearing.
Similarly, juvenile's placement in a Level III or IV residential treatment facility also was authorized by statute, and the court was permitted to order this type of dispositional alternative. North Carolina General Statutes, section 7B-2506(14) provides that when a juvenile has been adjudicated delinquent, a trial court may "[o]rder the juvenile to cooperate with placement in a residential treatment facility, an intensive nonresidential treatment program, an intensive substance abuse program, or in a group home other than a multipurpose group home operated by a State agency." N.C. Gen.Stat. § 7B-2506(14) (2004). In the instant case, the court found that juvenile had a history of aggressive behavior directed at younger children, and that a facility that offered twenty-four-hour monitoring would ensure that juvenile did not cause any further harm to other children. Thus, upon finding that juvenile posed a high risk to re-offend, and that he needed an extensive emotional evaluation to determine if he required a clinical diagnosis, the trial court had valid reason to order juvenile placed in a residential treatment facility that would provide the evaluation and treatment that he needed. As section 7B-2506(14) permitted this type of dispositional alternative, we hold the trial court did not commit error in ordering juvenile's placement in a residential treatment facility.
Juvenile argues that the trial court was not permitted to order his confinement for a period longer than fourteen days. Juvenile's argument is misplaced. North Carolina General Statutes, section 7B-2506(20) provides that a juvenile may "be confined in an approved juvenile detention facility for a term of up to 14 24-hour periods." N.C. Gen.Stat. § 7B-2506(20) (2004). This section of the statute is inapplicable to juvenile's case, as juvenile was not ordered to be confined in a juvenile detention facility, and was instead ordered to be placed in a residential treatment facility. As such, juvenile's argument on this basis fails.
On 21 December 2004, the same day the trial court entered the dispositional order, the court also entered a "Temporary Order *159 Affecting Custody and Placement," which provided for juvenile's custody and placement pending the appeal of his disposition order. This temporary order, in all material aspects, was identical to the court's dispositional order. We hold the temporary order, which also ordered juvenile to remain in custody of DSS and to be placed in a residential treatment facility for ninety days for evaluation purposes, was authorized pursuant to North Carolina General Statutes, section 7B-2605. Section 7B-2605 provides that:
Pending disposition of an appeal, the release of the juvenile, with or without conditions, should issue in every case unless the court orders otherwise. For compelling reasons which must be stated in writing, the court may enter a temporary order affecting the custody or placement of the juvenile as the court finds to be in the best interests of the juvenile or the State.
N.C. Gen.Stat. § 7B-2605 (2004). In the instant case, the trial court made, in writing, specific findings of fact and conclusions of law, stating that it was not in juvenile's best interest to return home at the present time, and that it was in his best interest to be placed in a residential treatment facility where he would receive the evaluation and treatment he needed. The court stated that juvenile's parents were unwilling to consent to the level of evaluation juvenile needed, and that it therefore was necessary that DSS be granted custody of juvenile. We hold the trial court acted properly in entering its temporary order which stated compelling reasons authorizing, pending appeal of his disposition order, DSS to be granted custody of juvenile and his placement in a residential treatment facility.
Affirmed.
Judges BRYANT and CALABRIA concurs.