An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1349
NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

IN THE MATTER OF:

    C.B.[1]
                                      Durham County
                                      No. 12 JB 127


Appeal by Juvenile from order entered 13 June 2013[2] by Judge Pat Evans in Durham County District Court. Heard in the Court of Appeals 9 April 2014.

---

[1] We use initials and pseudonyms throughout this opinion to protect the identity of the juvenile and his alleged victim.

[2] Juvenile gave oral notice of appeal at the close of the disposition hearing, but did not specify from what order (adjudication, disposition, or both) he wished to appeal. The written notice of appeal specifies the "judgment . . . entered in this matter on June 13, 2013, adjudicating . . . Juvenile to be delinquent and placing him in" a youth development center for an indefinite period not to exceed Juvenile's eighteenth birthday. As discussed herein, while the disposition order was entered 13 June 2013, the adjudication order was entered 21 February 2013. Appellate Rule 3(d) "provides that an appellant's notice of appeal shall designate the judgment or order from which appeal is taken. An appellant's failure to designate a particular judgment or order in the notice of appeal generally divests this Court of jurisdiction to consider that order." *Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 347, 666 S.E.2d 127, 133 (2008) (citation and quotation marks omitted), *cert. denied*, 363 N.C. 260, 677 S.E.2d 461 (2009).

*Attorney General Roy Cooper, by Assistant Attorney General Vanessa N. Totten, for the State.*

*Richard Croutharmel for Juvenile.*

STEPHENS, Judge.

*Procedural History and Factual Background*

On 9 July 2012, the State filed two juvenile petitions which alleged that juvenile C.B. ("Carl") committed second-degree rape and second-degree sexual offense against another juvenile ("Kate") on 5 June 2012. At the time of the alleged offenses, Carl was a fourteen-year-old seventh grade student at a public middle school in Durham. Carl had a history of attention deficit/hyperactivity disorder, oppositional defiant disorder, mood disorder, and other behavioral problems. Carl had previously been charged with felony breaking and entering, felony larceny after breaking and entering, and misdemeanor

---

However, a mistake in designating the order or judgment appealed from should not result in dismissal of an appeal if the intent to appeal from a specific judgment may fairly be inferred from the notice of appeal and the appellee is not misled by the mistake. *See Smith v. Independent Life Ins. Co.*, 43 N.C. App. 269, 274, 258 S.E.2d 864, 867 (1979). Here, Juvenile's notice of appeal clearly indicates his intent to appeal from both orders and the State has responded to all issues briefed by Juvenile, showing that the State was not misled by the error. Accordingly, we reach the merits of all of Juvenile's arguments.

larceny, but those charges had been resolved before June 2012. Carl had been placed in the socially and emotionally disabled ("SED")[3] class at the school. Carl had a tendency to roam the school's halls when he should have been in class.

On the day in question, several special education classes were combined for end-of-school-year activities. Carl's class was meeting with Kate's class. Kate was then a fourteen-year-old female student with Asperger's disorder, a form of autism. During class, Kate asked to go the girls' restroom and was given permission to do so. When she did not return as expected, a teaching assistant from Carl's class went into the hallway to look for her. He saw Kate walking from the opposite direction of the closest girls' restroom. The assistant asked where she had been, but Kate just looked at him blankly without responding. The assistant was aware that Carl had been roaming the halls during the time when Kate was out of the classroom.

The next day, another teaching assistant reported that Kate had been sexually assaulted by Carl. To a group of teachers, Kate described Carl taking her to a "secret place" at the school, telling her he would make her pregnant, and then having

---

[3] The transcript describes the class as an SED class, although other materials in the record describe it as a "behavior disorder," or BD, class.

anal and vaginal intercourse with her. Kate was examined by a sexual assault and forensic nurse examiner who found a small superficial tear in her vaginal area consistent with blunt force trauma and penile-vaginal penetration. Kate gave the nurse examiner a consistent report of the assault except she also reported that Carl had told Kate to "suck his penis."

On 6 July 2012, a clinical coordinator for the Duke Pediatrics Child Abuse and Neglect Medical Evaluation Clinic ("the Duke Clinic") interviewed Kate. Again, Kate gave a consistent report of the assault, but omitted any reference to being asked to suck Carl's penis. The Duke Clinic team concluded it was "probable" that Kate had been sexually abused.

On 8 August 2012, Carl moved to be examined to determine whether he was competent to proceed, noting that he was in special education classes and had been diagnosed with bipolar disorder. On the same date, the district court entered an order appointing David VandeVusse, Ph.D., to determine whether Carl was competent to proceed. By written report concerning his 22 August 2012 evaluation, VandeVusse notified the court that Carl was competent to proceed in the matter. The report stated that Carl had no "clear signs of a severe mental disorder[,]" but was at risk for "developing very significant mental health

problems." The only further reference to Carl's capacity to proceed in the court's orders appears in a continuance order signed on 6 September 2012, which states that "the juvenile is competent to stand trial."

The adjudication hearing was held 19-21 February 2013, and the evidence described above was introduced. Kate's testimony was consistent with her reports to the teachers, the nurse examiner, and the team at the Duke Clinic. Kate testified that there was a lot of blood in her panties after the assault. However, during the investigation, a police officer collected clothing Kate put on after coming home from school and showering on the day of the incident, rather than the clothing Kate had been wearing at the time of the assault. At the completion of the State's evidence, Carl's attorney moved to dismiss the petitions. The court denied the motion. Carl elected not to testify, but did offer into evidence an SBI lab report. Carl's attorney failed to renew his motion to dismiss at the close of all evidence.

The court found that the State had proven beyond a reasonable doubt the allegations in both petitions. Carl was adjudicated delinquent by order entered 21 February 2013. The court continued the disposition hearing and ordered Carl to

undergo a Sex Offender Specific Evaluation ("SOSE"). The SOSE resulted in a determination that Carl was at a "moderately high probability of recidivism . . . with respect to . . . sexual offenses." The juvenile court counselor recommended a Level 2 disposition. Reports by a psychologist and a psychiatrist who examined Carl in April and May 2013 recommended that Carl be placed in a locked facility known as a Psychiatric Residential Treatment Facility as opposed to a detention center so that he could receive appropriate mental health treatment. The disposition hearing was held on 13 June 2013. The court ordered a level 3 disposition with special conditions, including indefinite commitment to a youth development center for a period not to exceed Carl's eighteenth birthday. Carl gave notice of appeal in open court.

*Discussion*

On appeal, Carl argues that the district court erred in (1) failing to conduct a competency hearing and to make findings about his capacity to proceed, (2) denying his motion to dismiss for insufficiency of the evidence, and (3) imposing a Level 3 disposition. We affirm.

*I. Capacity to Proceed*

Carl first argues that the district court erred in failing to conduct a competency hearing and to make findings about his capacity to proceed.  We disagree.

Our Juvenile Code provides that "[t]he provisions of [sections] 15A-1001, 15A-1002, and 15A-1003 apply to all cases in which a juvenile is alleged to be delinquent."  N.C. Gen. Stat. § 7B-2401 (2013).  In turn, section 15A-1001 bars criminal proceedings against a defendant[4] "when by reason of mental illness or defect he is unable to understand the nature and object of the proceedings against him, to comprehend his own situation in reference to the proceedings, or to assist in his defense in a rational or reasonable manner."  N.C. Gen. Stat. § 15A-1001(a) (2013).  "When the capacity of the defendant to proceed is questioned, the court shall hold a hearing to determine the defendant's capacity to proceed."  N.C. Gen. Stat.

---

[4] All of the case law regarding competency or capacity hearings discussed in this opinion comes from criminal proceedings in our superior courts, rather than from juvenile matters. Accordingly, these opinions employ the language of criminal trials, such as "defendant," rather than the terms appropriate to juvenile proceedings.  However, as noted *supra*, our Juvenile Code explicitly specifies that the criminal statutes regarding capacity to proceed apply to juvenile proceedings, *see* N.C. Gen. Stat. § 7B-2401, and nothing in our case law or General Statutes suggests that the reasoning employed in criminal cases would not also apply to consideration of a juvenile's capacity to proceed.

§ 15A-1002(b) (2013).[5] Further, even where, as here, a defendant

does *not* request such a hearing,

> [a] trial court has a constitutional duty to institute, *sua sponte*, a competency hearing if there is substantial evidence that the accused may be mentally incompetent. In other words, a trial judge is required to hold a competency hearing when there is a *bona fide* doubt as to the defendant's competency even absent a request.
>
> . . .
>
> Evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant to a *bona fide* doubt inquiry. There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.
>
> . . .
>
> [W]here . . . the defendant has been . . . examined relative to his capacity to proceed, and all evidence before the court indicates that he has that capacity, he is not denied due process by the failure of the trial judge to hold a hearing.

---

[5] This statute was amended effective 1 December 2013, but the version quoted above was in effect at the time of the proceedings involving Carl.

*State v. Johnson*, 190 N.C. App. 818, 820-21, 661 S.E.2d 287, 289 (2008) (citations and internal quotation marks omitted).

Here, neither Carl nor his attorney requested a competency hearing pursuant to section 15A-1002(b). Further, after his attorney requested that Carl be examined to evaluate his capacity to proceed, the district court acquiesced and appointed VandeVusse to conduct an evaluation. The five-page "Competency Evaluation & Psychological Report" produced by VandeVusse contains a finding that Carl

> is competent to proceed to trial [sic]. His capacity to understand court proceedings is at least comparable to other youth his age, his ability to collaborate with his attorney is within normal limits, and his ability to behave appropriately within the court room [sic] is not seriously compromised, though he has quite significant mental health and behavioral issues.

Nothing in the record before this Court suggests that Carl behaved irrationally or was unable to assist his attorney during the adjudication proceedings. Because Carl was "examined relative to his capacity to proceed, and all evidence before the court indicate[d] that he ha[d] that capacity, he [wa]s not denied due process by the failure of the trial judge to hold a hearing." *Id.* at 821, 661 S.E.2d at 289 (citations omitted). This argument is overruled.

*II. Motion to Dismiss*

Carl next argues that the district court erred in denying his motions to dismiss the petitions for insufficiency of the evidence. Specifically, Carl contends the State failed to present sufficient evidence that he used force in the assault, that Kate was mentally disabled, or that Carl knew Kate was mentally disabled. We dismiss.

> In order to challenge the sufficiency of the evidence, a juvenile may make a motion to dismiss the petition at the close of the State's evidence during the adjudicatory hearing. However, if a defendant or juvenile fails to move to dismiss the action at the close of all the evidence, he may not challenge on appeal the sufficiency of the evidence to prove the crime charged.

*In re K.T.L.*, 177 N.C. App. 365, 369, 629 S.E.2d 152, 155 (2006) (citation, internal quotation marks, brackets, and ellipsis omitted), *disc. review denied*, 362 N.C. 472, 642 S.E.2d 442 (2007).

Carl acknowledges that he did not move to dismiss for insufficiency at the close of all the evidence, but cites *In re S.M.*, 190 N.C. App. 579, 660 S.E.2d 653 (2008), for the proposition that his right to appellate review was nonetheless preserved by his counsel's closing argument. In that case,

> [a]t the close of the State's evidence, [the juvenile] moved for dismissal for

insufficient evidence, and her motion was denied. [The juvenile] did not offer any witness testimony; her evidence consisted of the written statements by several teachers. After [the juvenile] introduced these statements, she rested her case and the trial court immediately asked "Would you like to be heard?" [The juvenile's] counsel argued vigorously that the evidence was insufficient to support the charged offense.

*Id.* at 581-82, 660 S.E.2d at 655. This Court concluded this was sufficient to preserve the juvenile's right to review. *Id.* at 582, 660 S.E.2d at 655.

Here, at the close of the State's evidence, Carl's attorney moved to dismiss on an unspecified basis: "Your Honor, at this point, just for the record, I will make a motion to dismiss the petition. I don't wish to be heard further at this point." The court denied this motion. Carl's attorney then introduced a single exhibit into evidence, but did not renew his motion to dismiss. In his closing argument, Carl's attorney did not refer to insufficiency of the evidence. Instead, he argued that Kate was not credible and that her statements about the assault were inconsistent. Carl's attorney suggested that Kate made up the story of a sexual assault because Carl had rejected Kate's advances toward him. In contrast, on appeal, Carl argues that the State failed to present sufficient evidence that he used force in the assault, that Kate was mentally disabled, or that

Carl knew Kate was mentally disabled, as required to sustain an adjudication of delinquency based upon second-degree rape.[6] Thus, even if we were to interpret (1) Carl's unspecified motion to dismiss at the close of the State's evidence as being based upon insufficiency of the evidence on *any* of the elements of the charges against him and (2) his closing arguments as a renewal of that motion, it is plain that Carl did not present any argument to the district court regarding insufficiency of the evidence as to Carl's use of force, his knowledge of Kate's mental disability, or the existence of that disability. We "will not consider arguments based upon matters not presented to or adjudicated by the trial tribunal." *State v. Eason*, 328 N.C. 409, 420, 402 S.E.2d 809, 814 (1991); *see also Wood v. Weldon*,

---

[6] Our General Statutes provide:

> (a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:
>
> (1) By force and against the will of the other person; or
>
> (2) Who is mentally disabled, mentally incapacitated, or physically helpless, and the person performing the act knows or should reasonably know the other person is mentally disabled, mentally incapacitated, or physically helpless.

N.C. Gen. Stat. § 14-27.3 (2013).

160 N.C. App. 697, 699, 586 S.E.2d 801, 803 (2003) ("As has been said many times, the law does not permit parties to swap horses between courts in order to get a better mount, meaning, of course, that a contention not raised and argued in the trial court may not be raised and argued for the first time in the appellate court.") (citation and internal quotation marks omitted). Accordingly, we dismiss Carl's arguments regarding the sufficiency of the State's evidence.

*III. Disposition*

Finally, Carl argues that the district court abused its discretion in determining his disposition. We disagree.

> Upon an adjudication of delinquency, a juvenile . . . is placed in a level of punishment, 1, 2, or 3, depending on the juvenile's delinquency history and the type of offense committed. . . .
>
> Once a juvenile is placed in a dispositional level, the statutes provide dispositional alternatives which may be utilized by the trial court. However, in those instances where there is a choice of level, there are no specific guidelines solely directed at resolving that issue. Accordingly, choosing between two appropriate dispositional levels is within the . . . court's discretion. Absent an abuse of discretion, we will not disturb the . . . court's choice. An abuse of discretion occurs when the . . . court's ruling is so arbitrary that it could not have been the result of a reasoned decision.

*In re Robinson*, 151 N.C. App. 733, 737, 567 S.E.2d 227, 229 (2002).

Section 7B-2508 of our General Statutes includes a chart indicating the authorized dispositional levels for various combinations of class of offense and delinquency history level. N.C. Gen. Stat. § 7B-2508(f) (2013). Both second-degree rape and second-degree sexual offense are Class C felonies, and Carl's delinquency history was "low." Accordingly, the district court had the authority to impose either a level 2 or level 3 disposition. *Id.*

In choosing among permitted dispositions, courts are directed to consider:

> (1) The seriousness of the offense;
>
> (2) The need to hold the juvenile accountable;
>
> (3) The importance of protecting the public safety;
>
> (4) The degree of culpability indicated by the circumstances of the particular case; and
>
> (5) The rehabilitative and treatment needs of the juvenile indicated by a risk and needs assessment.

N.C. Gen. Stat. § 7B-2501(c) (2013). A district "court is required to make findings demonstrating that it considered the

[section] 7B-2501(c) factors in a dispositional order entered in a juvenile delinquency matter." *In re V.M.*, 211 N.C. App. 389, 391-92, 712 S.E.2d 213, 215 (2011).

Carl first contends that the district court erred in considering "justice to the victim[,]" a factor not listed in section 7B-2501(c).  In *In re D.A.Q.*, the case Carl cites in support of this contention, we reversed and remanded an order of restitution entered in a juvenile matter where the district court "failed to make a finding of fact that the restitution was in [the juvenile's] best interest."  214 N.C. App. 535, 537, 715 S.E.2d 509, 511 (2011).[7]  "Instead, the court based its decision that [the juvenile] must pay [restitution] on a desire to avoid an 'injustice to the victim who has suffered a financial loss and would not [otherwise] be fully compensated.'"  *Id.* at 538, 715 S.E.2d at 511.  In explaining its reasoning, this Court observed that "compensation of victims should never become the only or paramount concern in the administration of juvenile justice."  *Id.* (citation and internal quotation marks omitted).

---

[7] "An order of restitution must be supported by the record, which demonstrates that the condition is fair and reasonable, related to the needs of the child, and calculated to promote the best interest of the juvenile in conformity with the avowed policy of the State in its relation with juveniles." *In re Schrimpsher*, 143 N.C. App. 461, 464, 546 S.E.2d 407, 410 (2001).

We find *In re D.A.Q.* easily distinguishable. Here, the dispositional order includes findings that the court considered Carl's predisposition report, needs assessment, and risk assessment. The order also contains the following findings:

> That the juvenile is a danger to the community per the nature of the charges, the multiple non[-]compliances with [electronic monitoring], alternatives to detention[, and] general court orders as well as directives of the JCC.
>
> That the victim suffered from mental illness prior to the crime and has suffered from PTSD as well as nightmares since the incident [and] after testifying in court.

First, any desire of the district court to "compensate" Kate was plainly not its "only or paramount concern" in this disposition. As Carl himself notes in his brief, if anything, the court's primary focus appeared to be public safety. Further, we do not find the language used in the second finding suggestive of a desire to compensate Kate in any way. Rather, it appears to reflect the court's consideration of subsections (2) ("The need to hold the juvenile accountable") and (4) ("The degree of culpability indicated by the circumstances of the particular case"). N.C. Gen. Stat. § 7B-2501(c). We see no error in the court's finding regarding the impact of the assault on Kate.

Carl also contends that the court erred because "nothing in the transcript [of the disposition hearing] show[s] that [the district court] considered *all* of the N.C. Gen. Stat. § 7B-2501(c) factors." Carl quotes a comment from the court which he asserts shows that the court considered only the need to protect public safety. We first note that the court must "make findings demonstrating that it considered the [section] 7B-2501(c) factors *in a dispositional order*" rather than simply orally at the conclusion of the hearing. *See In re V.M.*, 211 N.C. App. at 391-92, 712 S.E.2d at 215.

Further, the order's findings explicitly addressed subsections (1) (finding that "[t]he juvenile has been adjudicated for a violent or serious offense"), (2) (findings regarding the seriousness of the offense as well as Carl's history of noncompliance), (3) (finding that "the juvenile is a danger to the community"), (4) (findings regarding the violence and seriousness of the offense as well as the victim's mental disability), and (5) (findings that the court considered Carl's risk and needs assessments). This argument is overruled.

Accordingly, the order of the district court is

AFFIRMED.

Judges GEER and ERVIN concur.

Report per Rule 30(e).