STATE OF NORTH CAROLINA v. STEWART VANCE CODY

No. COA99-50

(Filed 7 December 1999)

**1. Criminal Law— denial of continuance—time to subpoena witness—reason for delay—prejudice**

In an assault with a deadly weapon inflicting serious injury case, defendant was not deprived of his constitutional right to present witnesses to confront the evidence against him by the trial court's denial of defendant's motion for continuance to subpoena a witness who was not located until one day prior to the trial date because defense counsel's unsworn statement, that he believed the witness would testify that defendant was not involved in the victim's assault and did not participate until the altercation, failed to provide detailed proof regarding a reason for delay and how defendant would be materially prejudiced by the witness's absence.

**2. Assault— deadly weapon inflicting serious injury—sufficiency of evidence**

Viewing the evidence in the light most favorable to the State, the trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury at the close of defendant's case-in-chief because the State presented evidence that: (1) the victim saw defendant participate in the fight and while the victim did not identify which participants struck him with which instruments, he was hit with both a gun and a log;(2) another witness saw defendant kick the victim a few times and hit the victim with a branch or a log; and (3) the victim suffered two hematomas near his brain and received fifteen stitches after being hit in the head with a log while lying on the ground, revealing a jury could find the log was a deadly weapon based on the severity of the victim's injuries and the manner in which the log was used.

**3. Assault— deadly weapon inflicting serious injury—instruction on acting in concert—sufficiency of evidence**

The trial court did not err in an assault with a deadly weapon inflicting serious injury trial by submitting the acting in concert theory under North Carolina Pattern Jury Instruction 202.10 because the State presented evidence that defendant was at the

STATE v. CODY

[135 N.C. App. 722 (1999)]

scene of the crime, defendant and two other men planned to assault the victim if he had a gun, and the three men did assault the victim after discovering he had a gun.

Appeal by defendant from judgment dated 4 June 1998 by Judge James E. Lanning in Buncombe County Superior Court. Heard in the Court of Appeals 26 October 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Christopher W. Brooks, for the State.*

*Thomas R. Young, for defendant-appellant.*

GREENE, Judge.

Stewart Vance Cody (Defendant) appeals from a jury verdict finding him guilty of assault with a deadly weapon inflicting serious injury.

On the morning Defendant's trial was scheduled to begin, Defendant made and the trial court denied an oral motion for continuance on the ground Defendant had located an additional witness, Christopher Cassell (Cassell), on the previous evening. Cassell lived in Maryland, and Defendant did not know whether he would voluntarily testify, but he could be subpoenaed to testify. Defendant believed if Cassell did testify, he would state Defendant "wasn't involved, basically" in the assault with which he had been charged, and Defendant "did not participate until the altercation."

The State presented evidence that on 22 September 1997, Joshua Chambliss (Chambliss), while at his home, spoke to Brandy Teague (Teague), his ex-girlfriend, over the telephone. Teague and Chambliss began to argue, and Chambliss could hear several male voices in the background at Teague's home. Chambliss and the parties at Teague's home began threatening one another, and Chambliss stated: "If you all come over to my house, you will end up leaving in body bags." Teague then hung up the phone.

Chambliss testified that approximately twenty or thirty minutes later, Joseph Ingle, II (Ingle), a friend of Teague, began beating on his front door, and when Chambliss opened the door Ingle struck him. The two began to struggle, and Chambliss pulled an unloaded BB gun (the gun) from his belt and hit Ingle with the gun. The gun then slipped out of Chambliss's hand, and Chambliss and Ingle began fighting on the ground.

After the fighting began, Defendant and Cassell ran toward where Chambliss and Ingle were struggling on the ground, and attacked Chambliss. One of the men struck Chambliss in the head several times with the gun, and Chambliss was also struck in the head with a log. Defendant, Ingle, and Cassell then ran away, and Chambliss telephoned for an ambulance. He was taken to the hospital, where he received fifteen stitches in his head and treatment for a broken finger and two hematomas near his brain.

Ingle testified that on the day of the incident he drove Defendant, Cassell, Teague, and Christina Pearce (Pearce) to Chambliss's house. Ingle went to the door and began to fight with Chambliss, and Cassell later joined in the fight and struck Chambliss on the head with the gun. Ingle and Cassell then began kicking Chambliss, and Cassell struck him on the head with a log. Ingle testified he did not see Defendant strike Chambliss.

Jana Osada, an investigator with the district attorney's office, testified Ingle met with her and other members of the district attorney's staff prior to Defendant's trial date. Ingle stated in the meeting that during the 22 September 1997 incident, Defendant kicked Chambliss all over his body, including his head. Defendant then picked up a log and, after telling Chambliss to remove his hands from his face, "swung the log down [onto] his face." Pearce testified that while riding to Chambliss's house on the date of the incident, the parties riding in the car decided they would fight Chambliss if he had a gun, and if he did not have a gun they would just speak with him. After the parties arrived at Chambliss's house, Pearce saw Chambliss had a gun and screamed "gun." The parties fought, and Pearce saw Defendant kick Chambliss a few times and hit him with "a branch or a log."

At the close of the State's case-in-chief, Defendant requested dismissal, in pertinent part, of the charge of assault with a deadly weapon inflicting serious injury, and the trial court denied this motion.

Defendant then proceeded to present evidence. Teague testified for Defendant the parties did not plan to fight with Chambliss when they drove to his house, but planned only to speak to him. After they arrived, Teague saw Chambliss had a gun and screamed "gun." She stated Defendant did not participate in the fight with Chambliss, and she did not see anyone with a stick during the fight.

At the close of Defendant's case-in-chief, Defendant made a second motion for dismissal of the assault with a deadly weapon

inflicting serious injury charge, and the trial court again denied the motion.

Over Defendant's objection, the trial court charged the jury, in pertinent part, on the doctrine of acting in concert under North Carolina Pattern Jury Instruction 202.10, as follows:

> For a person to be guilty of a crime, it is not necessary that he, himself, do all of the acts necessary to constitute the crime. If two or more persons join in a purpose to commit a crime, each of them, if actually constructively present, is not only guilty of that crime of assault if the other commits the crime, but he is also guilty of any other crime committed by the other in pursuance of the common purpose to commit the assault. So I charge you that if you find, from the evidence beyond a reasonable doubt, that on or about the date alleged that [Defendant], acting either by himself or acting together with others, did intentionally assault the victim with a stick or log, and that such stick or log was a deadly weapon, thereby inflicting serious injury upon the victim, it would be your duty to return a verdict of guilty of assault with a deadly weapon inflicting serious injury. However, if you do not so find or have a reasonable doubt as to one or more of these things, you would not return a verdict of guilty of assault with a deadly weapon inflicting serious injury.

The issues are whether: (I) Defendant was entitled to a continuance to subpoena a witness who was not located until one day prior to the trial date; (II) the State presented substantial evidence of the charge of assault with a deadly weapon inflicting serious injury; and (III) North Carolina Pattern Jury Instruction 202.10, acting in concert, was erroneously submitted to the jury.

I

[1] Defendant argues the denial of his motion for continuance deprived him of his constitutional right to present witnesses to confront the evidence against him. We disagree.

When a motion for continuance raises a constitutional issue, the trial court's ruling is a question of law and is fully reviewable on appeal. *State v. Searles*, 304 N.C. 149, 153, 282 S.E.2d 430, 433 (1981) (citing *State v. McFadden*, 292 N.C. 609, 234 S.E.2d 742 (1977)). Further, a motion for continuance made on the ground Defendant needs to secure a witness at trial raises a constitutional issue because

STATE v. CODY

[135 N.C. App. 722 (1999)]

a defendant has a constitutional right to present witnesses to confront the witnesses and testimony against him. U.S. Const. amend. VI; N.C. Const. art. I, § 23; *see State v. Davis*, 61 N.C. App. 522, 525, 300 S.E.2d 861, 863 (1983) (citations omitted). If an appellate court determines denial of such a motion was erroneous, the denial is prejudicial error unless the State demonstrates beyond a reasonable doubt the error was harmless. N.C.G.S. § 15A-1443(b) (1997).

In this case, Defendant's motion for continuance raises a constitutional issue and is therefore reviewable by this Court as a question of law. A motion for continuance must be supported by "detailed proof" which "fully establishe[s]" the reasons for the delay, and a party is entitled to a continuance only upon a showing of material prejudice if its motion is denied. *State v. Jones*, 342 N.C. 523, 531-32, 467 S.E.2d 12, 17-18 (1996) (citations omitted). The "detailed proof" may be in the form of an unsworn statement by the movant's attorney or an affidavit by the attorney which establishes the reason for delay and how the movant will be prejudiced if its motion is denied. While it is the better practice to support a motion for continuance with an affidavit, *State v. Gibson*, 229 N.C. 497, 501, 50 S.E.2d 520, 523 (1948) ("it is desirable that an application for a continuance should be supported by an affidavit showing sufficient grounds for the continuance"), an affidavit is not required, *see Jones*, 342 N.C. at 531, 467 S.E.2d at 17 (citations omitted) (motion for continuance *should* be supported by affidavit).

In this case, Defendant made an oral motion requesting a continuance on the day of the trial because he had not discovered the location of Cassell until the previous day. Defendant's motion was not supported by an affidavit, and Defendant did not provide any detailed information regarding the significance of Cassell's testimony; rather, Defendant's counsel, in an unsworn statement, merely stated he believed Cassell would testify Defendant "wasn't involved, basically" in Chambliss's assault and "did not participate until the altercation." This unsworn statement failed to provide detailed proof regarding how Defendant would be materially prejudiced by Cassell's absence. Indeed, the statement Defendant did not participate in Chambliss's assault "until the altercation" appears to support the State's contention Defendant participated in the assault. Because the unsworn statement of Defendant's counsel was insufficient to provide detailed proof of a reason for delay, the trial court did not err by denying Defendant's motion for a continuance. It follows Defendant was not deprived of his constitutional right to present witnesses to confront the evidence against him.

II

**[2]** Defendant contends the trial court erred by denying his motion, made at the close of Defendant's case-in-chief, for dismissal of the charge of assault with a deadly weapon inflicting serious injury.[1] We disagree.

A motion to dismiss based on insufficiency of the evidence to support a conviction must be denied if, when viewing the evidence in the light most favorable to the State, there is "substantial evidence to establish each essential element of the crime charged and that defendant was the perpetrator of the crime." *State v. Jordan*, 321 N.C. 714, 717, 365 S.E.2d 617, 619 (1988) (citations omitted). "Substantial evidence 'must be existing and real,' and is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *State v. Irwin*, 304 N.C. 93, 98, 282 S.E.2d 439, 443 (1981) (citations omitted)).

In this case, Defendant was charged with assault with a deadly weapon inflicting serious injury, and the State bore the burden of proving: (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; and (4) not resulting in death. N.C.G.S. § 14-32(b) (1993); *see State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990).

Defendant first contends the State did not present substantial evidence Defendant assaulted Chambliss. The State, however, presented evidence Chambliss saw Defendant participate in the fight and, while he did not identify which participants struck him with which instruments, he was hit with both a gun and a log. In addition, Pearce testified she witnessed Defendant kick Chambliss "a few times" and hit Chambliss with "a branch or a log." Viewing this evidence in the light most favorable to the State, a reasonable mind could find Defendant not only participated in Chambliss's beating, but also struck Chambliss with a log. The State therefore presented substantial evidence Defendant assaulted Chambliss.

Defendant also contends the State did not present substantial evidence Defendant used a deadly weapon during the assault. An instrument is a deadly weapon if it is "likely to produce death or great bodily harm under the circumstances of its use," and when the question

---

1. Defendant also argues in his brief to this Court that the trial court erred by denying Defendant's motion for dismissal of the assault with a deadly weapon inflicting serious injury charge at the close of the State's case-in-chief. Defendant, however, waived his right to appellate review of this issue when he presented evidence, N.C.R. App. P. 10(b)(3), and this issue is consequently not before this Court.

of whether an instrument might be deadly or produce great bodily harm turns on its manner of use, the determination is a question of fact for a jury. *State v. Joyner*, 295 N.C. 55, 64-65, 243 S.E.2d 367, 373 (1978).

In this case, the State presented evidence that while Chambliss was lying on the ground, Defendant, Ingle, and Cassell struck Chambliss, and Defendant hit him on his head with a log. Chambliss suffered two hematomas near his brain as a result of the incident, and received fifteen stitches. Based on the severity of Chambliss's injuries and the manner in which the log was used, a jury could find the log was a deadly weapon. *See State v. Randolph*, 228 N.C. 228, 231, 45 S.E.2d 132, 135 (1947) (citing *State v. West*, 51 N.C. (6 Jones) 595 (1859)) (actual effects of using weapon may be considered when determining whether character of weapon was deadly). This issue was therefore properly submitted to the jury.

III

[3] Defendant argues the trial court erred by submitting to the jury North Carolina Pattern Jury Instruction 202.10, acting in concert, because the State failed to establish the existence of a common purpose to commit the crime of assault. We disagree.

An instruction on the doctrine of acting in concert is proper when the State presents evidence tending to show the defendant was present at the scene of the crime and "acted together with another who did acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." *State v. Robinson*, 83 N.C. App. 146, 148, 349 S.E.2d 317, 319 (1986).

In this case, the State presented evidence Defendant was at the scene of the crime. Further, Pearce testified Defendant, Cassell, and Ingle decided they would fight Chambliss if he had a gun. After Defendant arrived at Chambliss's house, Chambliss struck Ingle with a gun and the two began to fight. Further, Pearce and Teague saw Chambliss had a gun and began to scream "gun." Defendant and Cassell then attacked Chambliss.

Because the State's evidence tends to show Defendant, Cassell, and Ingle planned to assault Chambliss if he possessed a gun, and the State presented evidence Defendant, Cassell, and Ingle did assault Chambliss after discovering he had a gun, the trial court did not err by submitting to the jury an instruction on the doctrine of acting in concert.

No error.

Judges WALKER and TIMMONS-GOODSON concur.