ELMORE, Judge.
Defendant Shawn C. Hollifield appeals from judgment entered upon a jury verdict finding him guilty of second degree murder. On appeal, defendant contends the trial court erred by informing the jury that co-defendant Savannah Rose Walker had already been convicted of second degree murder; by instructing the jury on the State's acting-in-concert theory of guilt, which defendant argues was not supported by the evidence; and by sentencing defendant for second degree murder as a Class B1 offense, where the jury rendered a general verdict without specifying which type of malice it found.
Because we conclude the trial court did not plainly err in disclosing Walker's conviction, and that the State's evidence was sufficient to support its acting-in-concert theory of guilt, we decline defendant's request for a new trial. However, because the jury rendered an ambiguous verdict, we vacate defendant's sentence for second degree murder as a Class B1 offense and remand for resentencing in accordance with N.C. Gen. Stat. § 14-17(b)(1).
I. Background
Defendant presented no evidence at trial, while the State's evidence tended to show the following.
As of December 2015, defendant and Walker were in a dating relationship, and Walker had purchased drugs from Deque Taylor ("the victim") on at least one prior occasion. On 3 December 2015, Walker sent the victim a Facebook message and arranged to buy three Percocet pills from him for $100.00. Defendant, Walker, and a third party, identified as Jonathan Moffitt, then met the victim at a gas station to make the exchange. The victim approached and entered the parties' vehicle-a Jeep Compass rented to and being driven by defendant-and sat in the rear passenger seat. Moffitt was seated in the front passenger seat, and Walker was seated behind defendant.
In the backseat of the vehicle, the victim gave Walker three pills in exchange for $100.00 in cash. Walker almost immediately realized the pills were fake and confronted the victim, who claimed to have been ripped off by the pill seller. As the victim and Moffitt began arguing, defendant put the vehicle in motion. The victim then opened the rear passenger side door in an attempt to exit the vehicle, but became entangled in his seat belt.
Upon leaving the gas station, defendant began driving quickly and erratically, swerving the vehicle, jumping the curb, and weaving through traffic. One witness testified to seeing the vehicle's rear passenger side door open, a toboggan hat fly out, and a man's legs come out of the open door, while another witness saw the man's foot hitting the pavement as the vehicle continued to sharply change lanes. A third witness testified that she first noticed the vehicle "driving erratically and fast. The passenger side wheels, both of them, were on the sidewalk." She then saw that the vehicle's rear passenger side door was open, a man's legs were hanging out, and his feet were dragging on the ground. A fourth witness testified that as the vehicle turned in front of his, he saw a man grasping on to the rear passenger side door, "where you would normally step into a vehicle ... clutching on and his rear on the ground." The witness went on to describe how the vehicle "increase[ed] speed rather rapidly" with the man "still hanging on."
The victim was then dragged for approximately half a block before someone in the vehicle cut his seat belt, causing him to fall into the road and roll onto the sidewalk. The victim was pronounced dead at the scene as a result of blunt force trauma to the head, and his non-lethal injuries included face and neck fractures as well as multiple abrasions of the face, torso, arms, and legs. Walker and defendant, who did not stop driving when the victim fell, hid in a trailer for approximately one month prior to their discovery and arrest.
Co-Defendant Walker's Testimony
At the time of defendant's trial, Walker had already been found guilty of second degree murder by another jury and had appealed her conviction. She testified at defendant's trial pursuant to an immunity agreement with the State. Prior to Walker's testimony, the trial court informed the jury that
there has been an offer of immunity extended and order of immunity granted in regard[ ] to testimony given by Ms. Walker in this case. So immunity has been granted for any testimony given in this case, as to any future trial that she may be involved in. And also part of that arrangement is that she will be resentenced in the mitigated range for second degree murder. And there will be a dismissal of a pending possession of methamphetamine case and a recommendation from the District Attorney's office regarding which correctional facility Ms. Walker will be housed in.
Walker testified that on 3 December 2015, defendant was driving the vehicle and the victim was arguing with Moffitt about the failed drug deal when "[h]e just opened the door and jumped." According to Walker, she then tried to pull the victim back into the vehicle while defendant continued driving; the victim was hanging from the rear passenger side door, and Moffitt continued arguing with the victim, punching him in the head at least twice. Walker further testified that immediately before Moffitt cut the victim's seat belt, defendant said "[d]o what you need to do to get the door shut." Walker admitted to giving a false version of events in a December 2015 written statement, but her January 2016 interview with a detective was consistent with her testimony at defendant's trial. A DVD recording of the interview-given prior to Walker's own trial as well as her grant of immunity-was admitted into evidence and played for the jury.
On cross-examination, Walker testified that her understanding of the immunity agreement was that the State could not use her testimony to "mess up [her] appeal." The following exchange then took place between Walker and defense counsel:
Q: So if you get a new trial-
A: Yes.
Q: -your conviction[s] for second degree murder gets set aside, the State can't use anything that you've said in this room today; is that right?
A: Yes.
Q: And they made that promise?
A: Yes.
Q: And they also promised you that if you would come in here and testify, that they would dismiss the charge of possession of methamphetamine against you, didn't they?
A: Again, I-I don't know. Like I said, they were suppose[d] to drop it since I went to trial. So I haven't seen any legitimate paperwork, so I don't know. It would be awesome if they did. But again, they promised me they would do that back in April, so-and they never did.
Q: They've also promised you that if you would come in here and testify that they would help you in having your sentence that you are currently serving reduced; right?
A: Yes.
Jury Instructions and Verdict
During the charge conference, the trial court indicated it would be reciting the pattern jury instruction for testimony of interested witnesses "with the modification which summarizes the arrangement that the DA's office had with Ms. Walker." Defense counsel did not object to the trial court giving that instruction as follows:
You may find that a witness is interested in the outcome of this trial. You may take the witness's interest into account in deciding whether to believe the witness. ....
You have heard testimony from Savannah Walker who was also charged with this crime and has agreed to testify in this case. In exchange for her testimony Savannah Walker is to receive immunity for any testimony she has given at this trial and any subsequent trial that she may face in relation to this matter, be resentenced for her conviction relating to this matter and her original sentence will be reduce[d] to the mitigated range[.]
Defense counsel did, however, object to the trial court instructing the jury on acting in concert. Given "the added complication" that Walker had already been convicted of second degree murder, defense counsel argued that the instruction would allow the jury "to become confused about their duties to determine guilt or innocence based on the evidence in this case and to instead conclude, well, she was guilty of second degree murder and since he was with her he is guilty too." In arguing against the acting-in-concert instruction, defense counsel also claimed that he knew of "no way ... to have kept [Walker's conviction] from the jury's consideration."
The trial court overruled defense counsel's objection and included the acting-in-concert instruction in its jury charge. Relevant portions of the charge include the following:
For a defendant to be guilty of a crime it is not necessary that the defendant do all the acts necessary to constitute the crime. If two or more persons join in a common purpose to commit second degree murder, each of them if constructively present is guilty of the crime. A defendant is not guilty of a crime merely because the defendant is present at the scene, even though the defendant may silently approve of the crime or secretly intend to assist in its commission. To be guilty the defendant must aid or actively encourage the person committing the crime or in some way communicate to another person the defendant's intention to assist in its commission.
....
If you find from the evidence beyond a reasonable doubt that on or about the alleged date the defendant, acting either by himself or acting together with other persons, intentionally and with malice wounded the victim, thereby proximately causing the victim's death, it would be your duty to return a verdict of guilty of second degree murder.
The trial court further instructed the jury on its duty to consider whether defendant had instead committed involuntary manslaughter by "act[ing] in a criminally negligent way," rather than with malice.
The jury returned a general verdict finding defendant guilty of second degree murder. Noting that defendant had been convicted of a "class B1 felony," the trial court sentenced him to an active term of 285 to 354 months' imprisonment. Defendant entered oral notice of appeal in open court.
II. Discussion
On appeal, defendant first contends the trial court erred by informing the jury that Walker had already been convicted of second degree murder. He asserts that the disclosure improperly influenced the jury toward a finding of malice, rather than criminal negligence, and was therefore highly prejudicial. In the alternative, defendant contends his trial counsel was ineffective by not attempting to exclude the fact of Walker's conviction from evidence. Defendant also argues that because the State failed to present substantial evidence of a common purpose shared by defendant and at least one other person, the trial court erred by instructing the jury on the theory of acting in concert. Lastly, defendant contends that because the jury issued an ambiguous verdict for sentencing purposes, the trial court improperly sentenced him for second degree murder as a Class B1 offense.
A. Disclosure of Co-Defendant Walker's Conviction
Unpreserved error in criminal cases is reviewed only for plain error, which must be "specifically and distinctly" argued on appeal. N.C. R. App. P. 10(a)(4).
For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
State v. Lawrence , 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citations, quotation marks, and brackets omitted).
Here, defendant failed to object to the trial court's disclosure of Walker's conviction to the jury. However, pursuant to Rule 10(a)(4) of our Rules of Appellate Procedure, he specifically and distinctly argues that the alleged error constitutes plain error. We therefore review the trial court's disclosure for plain error only.
N.C. Gen. Stat. § 15A-1052(c) provides that the trial court "must inform the jury of the grant of immunity and the order to testify prior to the testimony of the witness under the grant of immunity." N.C. Gen. Stat. § 15A-1052(c) (2017). Additionally, "[d]uring the charge to the jury, the judge must instruct the jury as in the case of interested witnesses." Id. In considering the statutory mandate, our Supreme Court has noted that "[o]bviously, the legislature intended for the jury to know the witness was receiving something of value in exchange for [her] testimony which might bear on [her] credibility." State v. Hardy , 293 N.C. 105, 120, 235 S.E.2d 828, 837 (1977).
In the instant case, the trial court properly complied with the requirements of N.C. Gen. Stat. § 15A-1052(c). Specifically, the trial court informed the jury prior to Walker testifying that an order of immunity had been granted as to her testimony. The trial court then reiterated that Walker would be receiving something of value in exchange for her testimony when, during the jury charge, it instructed the jury on the testimony of interested witnesses. Contrary to defendant's assertion on appeal, the trial court did not disclose the fact that Walker had already been convicted of second degree murder by another jury; rather, the trial court first informed the jury "that she will be resentenced in the mitigated range for second degree murder" and later reminded the jury that she would be "resentenced for her conviction relating to this matter."
In his brief, defendant emphasizes that Walker "did not plead guilty, but was tried. [Her] murder conviction, then, is not simply her own confession of involvement, but rather another jury's conclusion based on all of the evidence elicited at her trial." However, the trial court did not reveal any such details about the circumstances of Walker's conviction which would support defendant's claim that his jury was improperly influenced toward finding malice rather than criminal negligence.
Because defendant has failed to show that the alleged error had a probable impact on his jury's determination of guilt, this argument is overruled.
Ineffective Assistance of Counsel
Defendant argues, in the alternative, that his trial counsel was ineffective by not attempting to exclude the fact of Walker's conviction from evidence. He contends that trial counsel "should have objected to the prejudicial information at the time the trial court gave it to the jury; or better still, should have filed a motion in limine ... to ensure the information was excluded." Defendant further notes that "trial counsel could at minimum have requested a limiting instruction on the use of [Walker]'s conviction, but failed to do even that."
"When a defendant attacks his conviction on the basis that counsel was ineffective, he must show that his counsel's conduct fell below an objective standard of reasonableness." State v. Braswell , 312 N.C. 553, 561-62, 324 S.E.2d 241, 248 (1985) (citation omitted). To meet this burden, defendant must first show
that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
Id. at 562, 324 S.E.2d at 248 (quoting Strickland v. Washington , 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984) ).
"The fact that counsel made an error, even an unreasonable error, does not warrant reversal of a conviction unless there is a reasonable probability that, but for counsel's errors, there would have been a different result in the proceedings." Id. at 563, 324 S.E.2d at 248 (citation omitted). "Thus, if a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient." Id. at 563, 324 S.E.2d at 249.
As previously discussed, the fact of Walker's conviction was vaguely disclosed for the purpose of informing the jury that she would be receiving a reduced sentence in exchange for her testimony and thus may have an interest in the outcome of defendant's trial. Defendant's trial counsel elicited testimony to that same effect on cross-examination, during which he repeatedly questioned Walker's competency, recollection, and the status of her relationship with defendant in an effort to further undermine her credibility. Applying the above standards to the facts of the instant case, we conclude there is no reasonable probability that trial counsel's alleged error affected the outcome of defendant's trial, and this argument is likewise overruled.
B. Jury Instruction on Acting in Concert
Defendant next contends that because the "evidence did not show that defendant had a common plan or purpose with anyone else in the car to kill or seriously harm [the victim]," the trial court erred by instructing the jury on the State's acting-in-concert theory of guilt.
"To act in concert means to act together, in harmony or in conjunction one with another pursuant to a common plan or purpose." State v. Joyner, 297 N.C. 349, 356, 255 S.E.2d 390, 395 (1979). Thus, "[a]n instruction on ... acting in concert is proper when the State presents evidence tending to show the defendant was present at the scene of the crime and acted together with another who did acts necessary to constitute the crime pursuant to a common plan or purpose to commit the crime." State v. Cody, 135 N.C. App. 722, 728, 522 S.E.2d 777, 781 (1999) (citation and quotation marks omitted). "It is generally error, prejudicial to defendant, for the trial court to instruct the jury upon a theory of a defendant's guilt which is not supported by the evidence." State v. Brown , 80 N.C. App. 307, 311, 342 S.E.2d 42, 44 (1986) (citation omitted). "Assignments of error challenging the trial court's decisions regarding jury instructions are reviewed de novo [ ] by this Court." State v. Osorio , 196 N.C. App. 458, 466, 675 S.E.2d 144, 149 (2009) (citations omitted).
At the close of the State's evidence, the trial court noted "[i]n regard[ ] to the individual conduct of [defendant,] I don't think there's sufficient evidence to move forward [on the charge of second degree murder]. However, taking into consideration the evidence and the acting in concert theory ... there is certainly evidence to move forward based on the cumulative conduct of the parties." That conduct included the following: defendant drove Walker and Moffitt to the gas station to meet the victim; the exchange of pills and cash occurred in the backseat of the vehicle while defendant was seated in the driver's seat; when the drug deal failed, defendant quickly drove away from the gas station with Walker, Moffitt, and the victim still arguing in the vehicle; while the victim was entangled in his seat belt and his legs were hanging out of the open door, defendant failed to stop the vehicle despite having ample opportunity to do so; with the victim still grasping on to the open door, defendant continued to drive erratically by swerving the vehicle, sharply changing lanes, jumping the curb, and increasing speed; before the victim's seat belt was cut by another person in the vehicle, defendant said "[d]o what you need to do to get the door shut"; and after the victim fell from the vehicle, defendant continued driving.
From this evidence, the jury could find that defendant and at least one other person shared the common purpose to possess drugs, and that the malicious acts of defendant and at least one other person following the failed drug deal proximately caused the victim's death. Thus, because there was sufficient evidence to support the State's acting-in-concert theory of guilt, the trial court did not err in instructing the jury on that theory. Defendant's argument is overruled.
C. Sentencing for Second Degree Murder
In his final argument on appeal, defendant contends the trial court erred in sentencing him for second degree murder as a Class B1 offense because the jury's general verdict of guilty was ambiguous for sentencing purposes. The State concedes that defendant is entitled to a new sentencing hearing in which he should be resentenced for second degree murder as a Class B2 offense, and we agree.
"We review de novo whether the sentence imposed was authorized by the jury's verdict." State v. Lail , --- N.C. App ----, ----, 795 S.E.2d 401, 408 (2016).
Our Supreme Court has recognized three types of malice which, if found, may support a conviction for second degree murder: (1) "hatred, ill-will or spite, sometimes called actual, express or particular malice"; (2) "when an act which is inherently dangerous to human life is done so recklessly and wantonly as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief"; and (3) "that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." State v. Reynolds , 307 N.C. 184, 191, 297 S.E.2d 532, 536 (1982) (citations and quotation marks omitted). "The second type of malice is commonly referred to as 'depraved-heart' malice." State v. Mosley , --- N.C. App. ----, ----, 806 S.E.2d 365, 367 (2017) (citation and brackets omitted). As to sentencing, N.C. Gen. Stat. § 14-17(b) provides that
[a]ny person who commits second degree murder shall be punished as a Class B1 felon, except that a person who commits second degree murder shall be punished as a Class B2 felon in either of the following circumstances: (1) The malice necessary to prove second degree murder is based on an inherently dangerous act or omission, done in such a reckless and wanton manner as to manifest a mind utterly without regard for human life and social duty and deliberately bent on mischief.
N.C. Gen. Stat. § 14-17(b)(1) (2017).
In State v. Lail , we held that a general verdict is ambiguous for sentencing purposes "where the jury is charged on second-degree murder and presented with evidence that may allow them to find that either B2 depraved-heart malice or another B1 malice theory existed." --- N.C. App. at ----, 795 S.E.2d at 411. In such a situation, courts cannot speculate as to which type of malice the jury found to support its conviction, and the verdict should be construed in favor of the defendant. Id. (citations omitted).
In the instant case, the jury unanimously convicted defendant of second degree murder, but its verdict was silent on whether the conviction was a Class B1 or a Class B2 offense. Because there was evidence of depraved-heart malice to support a verdict of guilty of a Class B2 offense, we vacate defendant's sentence and remand for resentencing for second degree murder as a Class B2 offense. See Mosley , --- N.C. App. at ----, 806 S.E.2d at 369 ("Given the ambiguity in the second degree murder verdict in this case, we vacate defendant's sentence and remand the matter for resentencing for second degree murder as a Class B2 felony offense.").
III. Conclusion
Because we conclude that the trial court did not plainly err in disclosing Walker's conviction to the jury, that defendant did not receive ineffective assistance of counsel, and that the State's evidence was sufficient to support a jury instruction on acting in concert, we decline defendant's request for a new trial. However, because the jury rendered an ambiguous verdict, we vacate defendant's sentence for second degree murder as a Class B1 offense and remand for resentencing as a Class B2 offense.
NO ERROR IN PART; VACATED IN PART AND REMANDED.
Report per Rule 30(e).
Judges HUNTER and ZACHARY concur.