IN THE SUPREME COURT OF NORTH CAROLINA

No. 295A19

Filed 5 June 2020

IN THE MATTER OF: A.L.S.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on 18 April 2019 by Judge William F. Fairley in District Court, Bladen County. This matter was calendared for oral argument in the Supreme Court on 18 May 2020 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellees Amber S. and Clinton S.*

*No brief for appellee Guardian ad Litem.*

*Wendy C. Sotolongo, Parent Defender, and J. Lee Gilliam, Assistant Parent Defender, for respondent-appellant mother.*

BEASLEY, Chief Justice.

Respondent-mother appeals from the trial court's orders on adjudication and disposition, which terminated her parental rights to her daughter, A.L.S. (Anne).[1] The trial court also terminated the parental rights of Anne's biological father, who is not a party to this appeal. We affirm.

Anne was born on 5 November 2012. When Anne was nine weeks old, respondent-mother took a trip to the beach, ostensibly for the weekend, and left Anne

---

[1] A pseudonym is used to protect the juvenile's identity and for ease of reading.

in the care of petitioner Amber S., who is respondent-mother's third cousin. Respondent-mother did not return for Anne until three weeks later.

Amber S. married petitioner Clinton S. in March of 2013. In June of 2013, the Bladen County Department of Social Services (DSS) placed Anne in petitioners' care pursuant to a safety assessment and kinship care agreement. Anne has resided exclusively in petitioners' care since at least 2014.

In 2016, petitioners filed a civil complaint against respondent-mother and Anne's father (respondents) seeking custody of Anne. By order entered 1 December 2016, the District Court, Bladen County, found that respondents had "acted in a manner in consistent [sic] with their protected status as parents" of Anne and awarded petitioners "sole legal and physical care, custody and control of the minor child."

Petitioners filed a petition to terminate respondents' parental rights to Anne on 28 August 2018. Respondent-mother filed an answer denying the allegations contained in the petition and opposing the termination of her parental rights. The trial court held a hearing on the petition on 26 February and 27 March 2019. By separate adjudication and disposition orders entered on 18 April 2019, the trial court concluded that (1) grounds existed to terminate respondents' parental rights based on their willful abandonment of Anne, *see* N.C.G.S. § 7B-1111(a)(7) (2019); and (2) it was in Anne's best interests that respondents' parental rights be terminated. *See* N.C.G.S. §§ 7B-1109, -1110(a) (2019). Respondent-mother filed notice of appeal.

Respondent-mother first claims the trial court erred in denying her motion to continue the termination hearing in order to allow her sixteen-year-old son to testify on her behalf. "Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review." *State v. Walls*, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995). "If, however, the motion is based on a right guaranteed by the Federal and State Constitutions, the motion presents a question of law and the order of the court is reviewable." *State v. Baldwin*, 276 N.C. 690, 698, 174 S.E.2d 526, 531 (1970).

Respondent-mother did not assert in the trial court that a continuance was necessary to protect a constitutional right. We therefore review the trial court's denial of her motion to continue only for abuse of discretion. *See generally State v. Gainey*, 355 N.C. 73, 87, 558 S.E.2d 463, 473 (2002) ("Constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal."). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *State v. Hennis*, 323 N.C. 279, 285, 372 S.E.2d 523, 527 (1988). Moreover, "[r]egardless of whether the motion raises a constitutional issue or not, a denial of a motion to continue is only grounds for a new trial when defendant shows both that the denial was erroneous, and that he suffered prejudice as a result of the error." *Walls*, 342 N.C. at 24–25, 463 S.E.2d at 748.

The transcript shows that respondent-mother's counsel made an oral motion to continue at the beginning of the termination hearing on 26 February 2019. Counsel advised the trial court that respondent-mother had brought her sixteen-year-old son to counsel's office the previous day at 4:30 p.m. After speaking to the son, counsel determined his testimony was "necessary for the proper administration of justice" in that it "would not only corroborate . . . [respondent-mother's] testimony, it would also provide independent testimony as to negating some of the allegations against [her]." Counsel further advised the trial court that respondent-mother's son was in "SAT prep testing th[at] morning" and would not be able to appear in court until 2:00 p.m.

The trial court deferred a ruling on the motion to continue and proceeded to receive testimony from petitioners, the guardian *ad litem*, and respondents. After hearing from all of the witnesses in attendance, the trial court asked counsel when respondent-mother's son would be available. Respondent-mother's counsel replied that respondent-mother no longer had a ride to pick her son up at school and therefore, respondent-mother was renewing her motion to continue the termination hearing to another date. Counsel again characterized the son's expected testimony as "beneficial and crucial to [respondent-mother's] defense specifically as to the willfulness allegation." Over petitioners' expressed wish to "handle this today[,]" the trial court granted respondent-mother's motion and continued the termination hearing until 27 March 2019.

When the termination hearing resumed on the morning of 27 March 2019,

respondent-mother's counsel made another motion to continue on the ground that respondent-mother's son was not present to testify. Counsel stated he had "subpoenaed the residence [the son] resides at and subpoenaed the adult at that residence to produce him to court"[2] to no avail. Petitioners objected to respondent-mother's motion to continue, and the trial court denied it.

We conclude the trial court did not abuse its discretion in denying respondent-mother's second motion to continue the termination hearing in order to obtain her son's testimony. Respondent-mother was granted a month-long continuance for this purpose on the initial hearing date of 26 February 2019. As counsel for respondent-mother recognized, N.C.G.S. § 7B-1109(d) provides that "[c]ontinuances that extend beyond 90 days after the initial petition shall be granted only in extraordinary circumstances when necessary for the proper administration of justice." N.C.G.S. § 7B-1109(d). Petitioners filed their petition to terminate respondent-mother's parental rights in this case on 28 August 2018. **{R. at 2}** Because respondent-mother made no showing that extraordinary circumstances existed requiring a second continuance of the termination hearing, the trial court did not act unreasonably in denying her request. *See In re C.J.H.*, 240 N.C. App. 489, 495, 772 S.E.2d 82, 87 (2015).

We further note that, despite two opportunities, respondent-mother's counsel

---

[2] The record shows respondent-mother's son resided with his maternal grandmother.

offered only a vague description of the son's expected testimony and did not tender an affidavit or other offer of proof to demonstrate its significance. *See State v. Cody*, 135 N.C. App. 722, 726, 522 S.E.2d 777, 780 (1999) (deeming it "the better practice to support a motion for continuance with an affidavit"); *In re D.Q.W.*, 167 N.C. App. 38, 41–42, 604 S.E.2d 675, 677 (2004). Respondent-mother thus fails to demonstrate any prejudice arising from the trial court's denial of her motion to continue.

Respondent-mother next claims the trial court erred in adjudicating grounds for the termination of her parental rights. She contends the evidence and the trial court's findings of fact do not support its conclusion that she willfully abandoned Anne for purposes of N.C.G.S. § 7B-1111(a)(7).

"We review a trial court's adjudication under N.C.G.S. § 7B-1109 'to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law.' The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)).

Under N.C.G.S. § 7B-1111(a)(7), the trial court may terminate the parental rights of a parent who "has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition." N.C.G.S. § 7B-1111(a)(7). The "determinative" period in this case is the six months between 28 February 2018 and 28 August 2018. *See, e.g., In re Young*, 346 N.C. 244, 251, 485 S.E.2d 612, 617 (1997). The trial court may also "consider a parent's conduct outside

the six-month window *in evaluating a parent's credibility and intentions*" within the relevant six-month period. *In re C.B.C.*, 373 N.C. at 22, 832 S.E.2d at 697 (citation omitted).

"Abandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child." *In re Young*, 346 N.C. at 251, 485 S.E.2d at 617 (citation omitted). The willfulness of a parent's conduct under N.C.G.S. § 7B-1111(a)(7) "is a question of fact to be determined from the evidence." *Pratt v. Bishop*, 257 N.C. 486, 501, 126 S.E.2d 597, 608 (1962). We have repeatedly held that "[i]f a parent withholds [that parent's] presence, [ ] love, [ ] care, the opportunity to display filial affection, and willfully [sic] neglects to lend support and maintenance, such parent relinquishes all parental claims and abandons the child." *In re C.B.C.*, 373 N.C. at 19, 832 S.E.2d at 695 (second through fifth alterations in original) (quoting *Pratt*, 257 N.C. at 501, 126 S.E.2d at 608).

In support of its conclusion "[t]hat grounds exist for the termination of the respondents['] parental rights in that the respondents have abandoned the minor child for at least 6 months prior to the filing of this action," the trial court made the following findings of fact:

> 5. That the minor child has lived with the petitioners since she was approximately 9 weeks old, and has lived with the petitioners continuously subject to a custody order dated December 1, 2016.

. . . .

9.  That when the minor child was approximately nine weeks old, Respondent mother left [the] child with Petitioner for the weekend to go to the beach and did not return for the child until three weeks later.

10. That custody of the minor child was granted to petitioners on December 1, 2016 in Bladen County District Court in file 16CVD364.

. . . .

12. That respondents have never sought to modify that custody order.

13. That the respondents have not seen the minor child in excess of three years.

14. That there have been no phone calls or contact between the respondents and the minor child during that time period.

15. That petitioners have resided at the same address since 2012.

16. That respondent mother has been to that address at least two times.

17. That respondent mother testified that she was unaware of where the petitioners resided, and that the court finds this testimony lacking in credibility.

18. That even if she was unaware of the petitioners['] address, the court finds that petitioners had common relatives who did know the address.

19. That respondent[-mother']s claim that these common relatives would not tell . . . her the respondent[s'] address lacked credibility.

. . . .

21. That the respondents made no effort to locate such an address.

22. That respondent mother suffers from no [disability] that made it impossible to find the petitioners['] address.

. . . .

33. That respondent mother and father's lack of contact with [the] minor child evidences a subtle [sic] purpose to relinquish [their] legal obligation for care and support of the minor child.

34. That there is no evidence as to any physical or mental disability preventing the respondents from contacting the minor child.

35. That the court finds that the respondents willfully abandoned the minor child for at least 6 months prior to the filing of this action . . . .

Respondent-mother takes exception to the trial court's ultimate determination that her actions evince her willful abandonment of Anne as stated in finding of fact 35. *See generally In re N.D.A.*, 373 N.C. 71, 76, 833 S.E.2d 768, 773 (2019) ("[A]n 'ultimate finding is a conclusion of law or at least a determination of a mixed question of law and fact' and should 'be distinguished from the findings of primary, evidentiary, or circumstantial facts.' " (quoting *Helvering v. Tex-Penn Oil Co.*, 300 U.S. 481, 491, 57 S. Ct. 569, 574, 81 L. Ed. 755, 762 (1937))). Because respondent-mother does not challenge evidentiary findings of fact 5 through 34, we are bound thereby. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

We hold that the facts found by the trial court support its adjudication of willful abandonment under N.C.G.S. § 7B-1111(a)(7). The findings of fact show respondent-mother made no effort to have contact with Anne during the determinative six-month period or in more than two years immediately preceding this period, despite knowing petitioners and Anne's location. *See In re C.B.C.*, 373 N.C. at 23, 832 S.E.2d at 697 (affirming adjudication under N.C.G.S. § 7B-1111(a)(7) where, "in the six months preceding the filing of the termination petition, respondent made no effort to pursue a relationship with [the child]"); *In re E.H.P.*, 372 N.C. 388, 394, 831 S.E.2d 49, 53 (2019) (same).

Respondent-mother notes she was subject to the trial court's 2016 custody order which granted petitioners sole custody of Anne and "which did [not] allow [respondent-mother] any visits" with Anne. Respondent-mother further cites Amber S.'s testimony at the termination hearing, in which Amber S. acknowledged she would avoid taking Anne to her grandmother's house if she knew respondent-mother would be there. Respondent-mother contends this evidence provides an alternative explanation for her own conduct that is "inconsistent with a willful intent to abandon Anne."

We find respondent-mother's argument unpersuasive. While there was evidence of ill will between petitioners and respondent-mother, this Court has held that "a parent *will not be excused from showing interest in [the] child's welfare by whatever means available.*" *In re C.B.C.*, 373 N.C. at 20, 832 S.E.2d at 695 (citation

omitted). Respondent-mother's failure to even attempt any form of contact or communication with Anne gives rise to an inference that she acted willfully in abdicating her parental role, notwithstanding any personal animus between her and petitioners. Although the 2016 custody order did not give respondent-mother a right to visitation, the order in no way prohibited respondent-mother from contacting Anne. *Cf. In re E.H.P.*, 372 N.C. at 390, 831 S.E.2d at 51 (addressing adjudication of abandonment where respondent was subject to a no-contact order). Moreover, as the trial court found, respondent-mother "never sought to modify that custody order" in order to gain visitation rights.

The cases cited by respondent-mother are distinguishable from the facts *sub judice*. In *In re Young*, this Court reversed an adjudication of willful abandonment where the evidence showed that respondent's lack of contact with her child was in part attributable to the "hostile relationship between respondent and petitioner's family members who cared for [the child]." 346 N.C. at 252, 485 S.E.2d at 617. However, the evidence further showed that respondent began visiting her son as soon as she was told of his whereabouts, that respondent underwent surgery and began radiation and chemotherapy treatments for breast cancer during the relevant six-month period, and that "respondent had asked to see [her son] before her surgery [but] petitioner had denied her request." *Id*. at 251–52, 485 S.E.2d at 617. The Court concluded that "[t]his conduct does not evidence a willful abandonment of her child on the part of respondent." *Id*. at 252, 485 S.E.2d at 617.

Respondent-mother also cites *In re E.H.P.*, a case in which the respondent-father was forbidden by a temporary custody judgment from having any contact with his child until authorized by the trial court. 372 N.C. at 390, 831 S.E.2d at 51. Despite this no-contact provision and the fact that the respondent-father was in prison "for almost the entirety of the six-month period" at issue, this Court affirmed the trial court's order terminating his parental rights on the basis of willful abandonment. *Id.* at 394, 831 S.E.2d at 53. "By his own admission," we observed that "respondent[-father] had no contact with his children during the statutorily prescribed time period. In addition, he made no effort to have any form of involvement with the children for several consecutive years following the entry of the [t]emporary [c]ustody [j]udgment." *Id.*

Unlike the respondent-father in *In re E.H.P.*, respondent-mother was neither incarcerated nor subject to a no-contact order during the six months immediately preceding petitioners' filing of the petition to terminate her parental rights. Accordingly, notwithstanding her testimony that she lacked the funds to hire an attorney and "f[i]ght for custody" of Anne, we are satisfied that respondent-mother's unwillingness to attempt any form of communication with Anne over a period of years supports the trial court's adjudication of willful abandonment.

Because respondent-mother does not contest the trial court's determination that terminating her parental rights was in Anne's best interests under N.C.G.S. § 7B-1110(a), we do not consider that issue. Accordingly, the trial court's orders are

affirmed.

AFFIRMED.